[Civ. No. 17547.   Second Dist., Div. Three.   Sept. 27, 1950.]

EVELYN WALKER, Appellant, v. JOHN CALLOWAY, Individually and as Executor, etc., Respondent.

Edward S. Cooper and John Boyce-Smith for Appellant.

Perry Bertram for Respondent.

VALLÉE, J.—Appeal by plaintiff from a judgment dismissing the action after the sustaining of a demurrer to her amended complaint without leave to amend. The action is for specific performance of an oral agreement to will decedent's entire estate to plaintiff in consideration of services rendered decedent, and to establish a trust therein. Defendant, executor of the estate of Joe Wilmond, deceased, is sued individually and in his representative capacity. No claim was filed in the estate.

Decedent died testate January 6, 1948, leaving an estate of over $40,000 in the county of Los Angeles. His will, dated November 14, 1947, was admitted to probate on August 24, 1949. It appointed defendant executor of the estate, bequeathed $500 to plaintiff and, with the exception of several other bequests, bequeathed and devised the residue of the estate to defendant, a son of plaintiff and decedent. Plaintiff was the first wife of decedent. They were married in 1911, and had three children, including defendant. In 1915, dece-

dent deserted plaintiff and never thereafter contributed any-thing to her support or to that of the children during their infancy. Decedent secured a divorce from plaintiff. There-after he contracted two other marriages, both of which cul-minated in divorce.

In addition to the foregoing, the amended complaint alleged: In May, 1947, decedent telephoned plaintiff at Dowagiac, Michigan, where she resided and was employed, and told her he was suffering from cancer and did not expect to live much longer, he realized he had treated her badly in deserting her and leaving her to support herself and the three young chil-dren, "he had a nurse and did not need a servant or house-hold services," he offered and agreed that if plaintiff would leave Dowagiac and come to Los Angeles "and give him her companionship and affection" and "solace his remaining days," he would leave his entire estate to her by will upon his death. Leaving Dowagiac "meant uprooting her [plain-tiff's] whole plan of life at an advanced age, at great sacrifice of her personal comfort, peace of mind and security," but in reliance upon decedent's promise and at his special instance and request, plaintiff abandoned "her residence, occupation and home ties and associations" in Dowagiac and on September 22, 1947, traveled "about 2000 miles to strange surroundings, at an advanced age, to Los Angeles, California." Thereafter and up to the time of decedent's death on January 6, 1948, she gave decedent "the solace of her companionship, affection-ate care and tender ministration." She would not have left Michigan and come to Los Angeles if decedent had not induced her to do so by his promise to leave her his property and estate by will. Pursuant to this agreement decedent executed a will in which practically all of his property was left to plaintiff (a copy of the instrument which is signed by decedent and the subscribing witnesses is attached to the complaint as an exhibit). Subsequent to the execution of this will, defendant fraudulently procured decedent to change his will and execute the will admitted to probate. The execution of the latter will was a fraud upon plaintiff's rights and a breach of decedent's agreement. Defendant holds the estate as trustee for the use and benefit of plaintiff by reason of the agreement and performance on her part. Although the agree-ment is not in writing, plaintiff fully performed the agreement on her part and "changed her position to her great detriment . . . in an amount which cannot be estimated in money, and

she has no adequate remedy at law for breach of said agreement,'' and defendant is equitably estopped from asserting the invalidity of the verbal agreement.

The question is whether plaintiff has pleaded sufficient facts to take the oral contract out of the statute of frauds.

Where a contract is within the statute of frauds, as it is here (Civ. Code, § 1624(6); Code Civ. Proc., § 1973(6)), the mere rendition of services is not usually such a part performance of a verbal agreement as will relieve the contract from the operation of the statute, but "if the services are of such a peculiar character that it is impossible to estimate their value by any pecuniary standard, and it is evident that the parties did not intend to measure them by any such standard, and if the plaintiff, after the performance of the services, could not be restored to the situation in which he was before the rendition of the services, it is such a part performance of the verbal agreement as will remove the contract from the rule, and equity, where other objections are not present, will decree specific performance. But in such cases the reason for the interposition of equity is quite obvious. Plaintiff has rendered services of extraordinary and exceptional character, such service as in contemplation of the parties was not to be compensated for in money, and, as in contemplation of law, cannot be compensated for in money; therefore, by no action at law could a plaintiff be restored to his original position. It would be in the nature of a fraud upon him to deny him any relief, and, the law failing by reason of its universality, equity, to promote justice, makes good its imperfections. (Waterman on Specific Performance, § 41; Pomeroy's Specific Performance, § 114.)." (*Owens* v. *McNally*, 113 Cal. 444, 450 [45 P. 710, 33 L.R.A. 369]; *McCabe* v. *Healy*, 138 Cal. 81 [70 P. 1008]; Anno. 69 A.L.R. 14, 120, et seq.; 106 A.L.R. 742, 756, et seq.)

The services called for under the contract here were similar in nature to those in *Barry* v. *Beamer,* 8 Cal.App. 200 [96 P. 373], and *Fowler* v. *Hansen,* 48 Cal.App.2d 518 [120 P.2d 161], which were held to be of an unusual and exceptional character.

In *Barry* v. *Beamer, supra,* the complaint alleged that decedent, 73 years of age, '' 'was growing old and had not a great while to live, and that he greatly desired in his declining years to have some one of his own blood near him to give to his old age the comforts of a home, to care for him in his sickness, to do his general housekeeping, to see to the cooking

of his food, his washing and mending, and particularly to give to him that love and affection due from a sister to a brother.' '' In holding there was such a change of position and relationship in reliance upon the oral contract and that the value of the services rendered were not subject to any pecuniary standard, the court said, p. 209: ''As he [decedent] grew older, naturally life to him under such circumstances became irksome and wearisome, and with his advancing years he, naturally, the more and more yearned for the companionship and tender care of the one who, of all living persons, could the more completely and satisfactorily fill the long-existent hiatus in an unhappy and then rapidly waning life. He earnestly and, it may be, pleadingly besought his only sister to dispose of her own home—a home where she had spent many of the years of her life in comfortable circumstances, and valued by her not more perhaps because of its intrinsic worth than because to her it was hallowed by pleasant memories and fond associations—and come to him, situated as he was, that he might be given the care and attention which he could, under the circumstances, only derive through the love and affection of a sister. She not alone complied with his request to live with and take care of him, but turned over to him all her means to be used in his business. . . . She rescued him from a life of uncleanliness and misery, and gave him comforts to which he had been unused, and when his last illness attacked him, she tenderly and affectionately cared for him, and thus minimized the sufferings of the last, expiring hours of his life. For five years, he declared, and well could he do so, 'he had lived like a white man.'

''Is there any possible money compensation equal to the service thus rendered and the sacrifices thus made by this sister? Could the plaintiff, under the circumstances disclosed by the record, be placed in *statu quo* by any known legal remedy? Why should not equity enforce such a contract as is shown here? The evidence shows an adequate consideration; that the contract is just and reasonable as to the parties against whom it is sought to be enforced; there is no showing, nor an attempt at showing, that the plaintiff practiced fraud or undue influence in securing the contract; that it is certain and definite, . . . and its enforcement will not involve the invasion of the legal or equitable rights of an innocent third party.'' (See also to the same effect *McCabe* v. *Healy*, 138 Cal. 81 [70 P. 1008].)

In *Fowler* v. *Hansen*, 48 Cal.App.2d 518 [120 P.2d 161], plaintiff appealed from a judgment rendered on the pleadings and on a portion of the opening statement, in an action to compel specific performance of a contract to make a will and to impress a trust upon the estate of decedent. The complaint alleged that decedent promised to make a will giving plaintiff and his wife one-half of all her property provided they moved from Texas to Los Angeles and established a home for decedent's mother and "care and provide for the mother and 'administer unto her welfare and wishes and render unto her love and affection until the time of her death.' '' In reversing the judgment, the court stated (p. 523) that it was " 'out of the power of any earthly tribunal to restore the parties to their original situation and environment.' . . . [p. 525] it appears from the pleading itself that the compensation intended by decedent for the peculiar and exceptional services and loving care and attention which they were giving to the mother—and their acts in taking up residence in a city other than that in which they had been living, and, we may assume, undergoing readjustments in their social and economic relationships—was to be, not any payment in dollars or cents during her lifetime, but that upon her death they should benefit to the extent of one-half of her estate."

Where the services rendered by plaintiff consisted in nursing and caring for a person enfeebled and suffering from a horrible disease, requiring constant and unceasing watchfulness, harrowing to the mind, destructive to the peace and comfort of the one performing the services, and possibly injurious to the health, it has been held that it is impossible to estimate their value by any pecuniary standard; and where it is evident that decedent did not intend so to measure them, it is out of the power of any court, after the performance of such services, to restore the plaintiff to the situation in which he was before the contract was made or to compensate him therefor in damages. (See *Traver* v. *Naylor,* 126 Ore. 193 [268 P. 75] ; *Lothrop* v. *Marble,* 12 S.D. 511 [81 N.W. 885, 76 Am.St.Rep. 626] ; *Velikanje* v. *Dickman,* 98 Wash. 584 [168 P. 465] ; *Howe* v. *Watson,* 179 Mass. 30 [60 N.E. 415] ; *Rhodes* v. *Rhodes,* 3 Sandf.Ch. (N.Y.) 279 ; *Bryson* v. *McShane,* 48 W.Va. 126 [35 S.E. 848, 49 L.R.A. 527] ; *Brinton* v. *Van Cott,* 8 Utah 480 [33 P. 218] ; *Fred* v. *Asbury,* 105 Ark. 494 [152 S.W. 155] ; *McCullom* v. *Mackrell,* 13 S.D. 262 [83 N.W. 255] ; *Schoonover* v. *Schoonover,* 86 Kan. 487 [121 P. 485, 38 L.R.A.

N.S. 752]; Anno. 69 A.L.R. 149; 106 A.L.R. 760, and cases cited.

To enforce an oral contract to bequeath or devise property in equity by quasi-specific performance, it must be shown that the contract is definite and certain, the consideration adequate, that the contract is founded on good morals and not against public policy, that the character of the services is such that a money payment would not furnish adequate compensation to the plaintiff, that there is such a change in the plaintiff's condition and relations in reliance on the contract that a refusal to complete the contract would be a fraud upon him, and that the remedy asked for is not harsh, oppressive or unjust to innocent third parties. (*Brown* v. *Freese,* 28 Cal. App.2d 608, 615 [83 P.2d 82]; *Fowler* v. *Hansen,* 48 Cal.App. 2d 518, 522 [120 P.2d 161]; *Barry* v. *Beamer,* 8 Cal.App. 200, 210-211 [96 P. 373]; *Shive* v. *Barrow,* 88 Cal.App.2d 838, 847 [199 P.2d 693]; *Khoury* v. *Barnham,* 85 Cal.App.2d 202, 211 [192 P.2d 823].)

It is not necessary that the complaint state in so many words that there was an adequate consideration for the contract or that the contract was fair and just, or that the character of the services rendered was such that they are not susceptible of pecuniary measurement; for such allegations, standing alone, constitute mere conclusions. It is sufficient if the complaint alleges facts from which these conclusions may be drawn. (*Notten* v. *Mensing,* 3 Cal.2d 469, 477 [45 P.2d 198]; *Fowler* v. *Hansen,* 48 Cal.App.2d 518, 525 [120 P.2d 161].)

Cases cited by defendant were distinguished at length in *Fowler* v. *Hansen,* 48 Cal.App.2d 518, 523 [120 P.2d 161]. No purpose would be served in repeating the distinguishing features here. The facts pleaded clearly distinguish the present case from *Murdock* v. *Swanson,* 85 Cal.App.2d 380 [193 P.2d 81].

While the complaint here is not an exemplar of model pleading, it sufficiently pleads facts which take the case out of the operation of the statute of frauds. There are sufficient facts alleged, which upon demurrer must be taken as true, from which it appears that the contract was definite and certain, the consideration adequate, that it was not against public policy, that the services alleged to have been rendered by plaintiff were of such an extraordinary and peculiar nature that they could not be, and in the contemplation of the parties

were not to be, compensated for in money, and that there was such a change in plaintiff's condition and relations in reliance on the contract that a refusal to complete the contract would be a fraud upon her. An ordinary action at law for breach of the contract would not give plaintiff the thing to which she is entitled under the allegations of her complaint—would not afford her full and adequate relief. The promise came from decedent, who was suffering the last days of cancer and who knew he had not long to live. It was made to a woman who had formerly been his wife, and to whom, in his hour of need, he turned for that comfort, care and consolation which he felt only she could give. He allegedly desired none of the usual services of a nurse or housekeeper. The contract which he proposed, and which plaintiff accepted, answered his special needs. The promise was made to induce, and it did induce, action. Plaintiff assumed an obligation which, under the circumstances of the case, she need not have assumed, and which required of her, at a late stage in life, to abandon her own home and personal comforts, her employment, her old friendships and acquaintances, and to adjust herself to a new pattern of life laid down by the needs and requirements of decedent. The duties which she assumed, by the acceptance of the contract, must, in the very nature of things, have been most exacting and tedious and, at times, distasteful and disagreeable. In rendering the services called for by the contract, defendant received the benefit of plaintiff's society and companionship, "affectionate care and tender ministration" until his death.

Respondent claims that the short duration of plaintiff's services was inadequate as a consideration to sustain specific performance. It sufficiently appears that there was adequate consideration for the contract, for, as stated in *Velikanje v. Dickman, supra,* 98 Wash. 584 [168 P. 465, 470], in answer to a similar contention, ". . . the extent of the consideration is to be measured by the breadth of the undertaking rather than by the eventuality. Respondent might have had to serve and nurse for many years. Each party to the agreement knowingly stood the loss or gain by that contingency." (See *Howe v. Watson,* 179 Mass. 30 [60 N.E. 415, 418]; Anno. 69 A.L.R. 115; 106 A.L.R. 756.)

It also appears from the complaint that no injustice or harshness would ensue to respondent, who, since the allegations of the complaint are taken as true, appears not to be an innocent party.

■ It was not necessary that the complaint show that, before its filing, the plaintiff presented a demand or claim for the property to the executor. Plaintiff is not asserting a claim against the estate. The relief sought is equitable. The law does not require the presentation of a claim as a condition precedent to the maintenance of an action in quasi-specific performance. (*Furman* v. *Craine,* 18 Cal.App. 41, 46 [121 P. 1007]; *Trower* v. *Young,* 40 Cal.App.2d 539, 542-548 [105 P.2d 160]. See *McKay* v. *Security-First Nat. Bank,* 35 Cal. App.2d 349, 355 [96 P.2d 376]; Anno. 113 A.L.R. 1070.)

We hold that the complaint states facts sufficient to constitute a cause of action. We do not decide, however, that the complaint may not be subject to special demurrer, and the court may in its discretion require the clarification of uncertainties or ambiguities, if any, in the complaint.

Reversed.

Shinn, P. J., and Wood (Parker), J., concurred.