[No. D025287. Fourth Dist., Div. One. June 26, 1997.]

Estate of JOHN HOUSLEY, Deceased.
BRIAN HOUSLEY, Petitioner and Appellant, v.
BARBARA HAYWOOD, as Executor and Trustee, etc., Objector and
Respondent.

**[Opinion certified for partial publication.\*]**

*This opinion is certified for publication with the exception of part I of the Discussion.

## Counsel

Jones, Penfield, Barden, Finegold & Polakiewicz and Thomas E. Polakiewicz for Petitioner and Appellant.

J. William Moore and Clarence W. Finley for Objector and Respondent.

## Opinion

McDONALD, J.—Plaintiff Brian Housley (Brian) appeals a summary judgment in favor of defendant Barbara Haywood (Barbara), as the successor executor of the will of John Housley (John) and as the successor trustee of John's trust.[1] Brian alleges John breached an oral agreement to leave all of his property on his death to Brian. The trial court found that equitable estoppel did not preclude Barbara from asserting the applicable statutes of fraud.[2] On appeal Brian contends that his papers opposing the summary judgment motion presented sufficient evidence to create triable issues of material fact on this question and that the court erred by granting the summary judgment motion. We agree and reverse the judgment.

### Factual and Procedural Background[3]

John and his wife[4] had two children, Brian and Joan. John's wife died in 1957 when both children were adults. In 1959 Brian helped John build a house in Poway. Brian lived with John in that house from 1959 through 1989, except for a period from 1961 through 1963 when Brian served in the United States Army. During that 30-year period, Brian stayed with and cared for his father "only because he asked for and needed [Brian's] help, and there was no one else to take care of him." On many occasions John asked Brian "to do something for him and would say that [Brian] should do it because he was going to leave everything to [Brian] in his will." According to Brian, "[t]hese expressions became so common that an understanding grew up between us that in exchange for my taking care of him, he would

---

[1]Barbara's mother, Joan Haywood (Joan), was the original executor of John's will.

[2]The trial court did not determine whether Probate Code section 150 or its predecessor, former Civil Code section 1624, subdivision 6, was the applicable statute, but rather found that both statutes of fraud would preclude Brian from pursuing his action to enforce the alleged oral agreement.

[3]Our factual summary is based on the evidence considered most favorably to Brian, the party opposing the summary judgment motion. We do not intend to suggest that John did, in fact, enter into an oral agreement with Brian. This issue and all other factual issues are matters to be determined by the trier of fact.

[4]The record does not disclose the name of John's wife.

leave everything to me." Although Brian could not recall any specific dates, he was certain John "promised [Brian] many times that if [Brian] would take care of [John] he would leave all of his property to [Brian] when he died." Brian would not have cared for John and paid many of his expenses had John not promised that "he would leave all of his property to [Brian] in his will and trust."

John had few friends or acquaintances and grew mean and bitter as he aged. He retired as a pipe fitter in 1973. He was a miser and collected junk, which filled the house. When Brian tried to clean the house, John prevented him from doing so and became enraged when Brian suggested they discard anything. When conditions became "squalid" in 1989, Brian moved out of the house and into his own home. However, Brian continued to provide daily care for his father, picking him up every day after work and taking him to his house for dinner, the only regular meal John had each day.

Before John retired in 1973, John and Brian normally shared living expenses. However, after John retired, Brian assumed a greater share of this financial burden. Toward the end of John's life, Brian paid John's living expenses except property taxes.

In 1989 John became obsessed by an inverse condemnation lawsuit he filed against the City of Poway for its encroachment on his property caused by widening a street. His attorney fees and costs exceeded $100,000. Brian loaned his father much of the required money and assisted him in the case. Brian took John to his deposition and to the trial every day. Although John initially was awarded a judgment of $250,000, he ultimately recovered only $40,000 after appeal. John was upset with the result of his lawsuit and blamed Brian for its outcome. John told Brian to stay away from him and threatened to shoot Brian. John owned a .22-caliber rifle and was irrational, causing Brian to believe that John would shoot him. As a result, on or about April 1, 1994, Brian began avoiding his father. Thereafter, John often called Brian and yelled at and blamed him for John's perceived misfortunes.

In May 1994 John went to Brian's home and gave Brian a $35,000 check and a note demanding payment of rent purportedly accrued during the 30-year period Brian lived at John's house and of compensation for other matters. Rent never had been discussed by John and Brian before that date. The check repaid Brian for amounts he had loaned John to finance John's lawsuit.

On May 18, 1994, John died from a self-inflicted gunshot wound.

John had executed a will and inter vivos trust on or about December 14, 1989, which named Brian as a beneficiary. However, on or about April 29,

1994, John executed a codicil to the will and amended the trust to remove Brian as a beneficiary in each. After John's death his will and codicil were admitted to probate and Brian filed this petition seeking a constructive trust be placed on John's estate and an order declaring Brian to be a beneficiary of the trust based on Brian's detrimental reliance on John's alleged promises to leave all of his property to Brian.[5] The petition alleged that the executor and trustee is estopped from relying on the statute of frauds because a failure to enforce the agreement between John and Brian would result in an unconscionable injury to Brian. As executor and trustee, Joan answered the petition by alleging in part that the purported oral contract was invalid under the statute of fraud provisions of Civil Code section 1624 and Probate Code[6] section 150.

Barbara, as successor executor and successor trustee, moved for summary judgment on the grounds that the applicable statutes of fraud preclude enforcement of the alleged oral agreement, that there is no evidence to estop her from pleading the statutes of fraud, and that Brian breached his agreement with John. Brian opposed the summary judgment motion, arguing there are triable issues of material fact as to whether Barbara is equitably estopped from asserting the statutes of fraud. The trial court granted the summary judgment motion and entered judgment for Barbara. Brian appeals the summary judgment.

## DISCUSSION

### I

*Summary Judgment Standard of Review*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

*A Triable Issue of Fact Exists as to the Date of the Alleged Oral Agreement*

■ Section 150 applies to contracts to make a will or devise which are "made after December 31, 1984." Section 150 states: "(a) A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, if

---

[5]The petition also contested the codicil to the will and sought a declaration that the trust amendment was invalid because John was incompetent at the time those actions were taken. However, during the course of the summary judgment motion proceedings Brian apparently represented to the trial court that he had abandoned these two grounds for relief.

[6]All statutory references are to the Probate Code unless otherwise specified.

\*See footnote, *ante*, page 342.

made after December 31, 1984, can be established only by one of the following:

"(1) Provisions of a will stating material provisions of the contract.

"(2) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract.

"(3) A writing signed by the decedent evidencing the contract.

"(b) The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills.

"(c) A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, if made on or before December 31, 1984, can be established only under the law applicable to the contract on December 31, 1984."

Therefore if the alleged agreement was made on or before December 31, 1984, the applicable statute of frauds is former Civil Code section 1624, subdivision 6[7] (hereafter Civil Code section 1624(6)). If the alleged agreement was made after December 31, 1984, the applicable statute of frauds is section 150.

In this case Brian's verified petition and papers opposing the summary judgment motion do not specify on what date or dates during the 30-year period John allegedly made the oral agreement with Brian. In his deposition Brian stated he could not specify the date on which the agreement was made between himself and John. In his declaration opposing the summary judgment motion, Brian stated that during the years he and John lived together John "many times" expressed that Brian should do what he asked because he was going to leave everything to Brian in his will and that "[t]hese expressions became so common that an understanding grew up" between them that in exchange for Brian's taking care of John, John would leave everything to him. Because John and Brian lived together from 1959 through 1989, John's initial "expressions" to Brian could have been made prior to or after 1985. They had lived together approximately 25 years before the provisions of section 150 became operative and had lived together 4 years after section

---

[7]Prior to 1985 Civil Code section 1624 provided: " 'The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent: . . . 6. An agreement which by its terms is not to be performed during the lifetime of the promisor, or an agreement to devise or bequeath any property, or to make any provision for any person by will.' " (*Horstmann* v. *Sheldon* (1962) 202 Cal.App.2d 184, 188 [20 Cal.Rptr. 735].)

150 became operative. We therefore cannot say, as a matter of law, whether section 150 or Civil Code section 1624(6) applies to the alleged agreement between John and Brian. Rather, there is a triable issue of fact as to when the alleged agreement, if proved to exist, was formed.

## III

### *Equitable Estoppel Principles Prior to 1985*

■ Equitable estoppel principles are available to enforce qualifying oral agreements to make a will or devise which were made prior to 1985.[8] In *Day v. Greene* (1963) 59 Cal.2d 404 [29 Cal.Rptr. 785, 380 P.2d 385, 94 A.L.R.2d 802], the California Supreme Court concluded that the statute of frauds set forth in Civil Code section 1624(6) did not make unenforceable an oral agreement to make a will if equitable estoppel applied: "Although the statute [of frauds] requires that an agreement to make a provision by will be in writing [citations], a party will be estopped from relying on the statute where fraud would result from refusal to enforce an oral contract [citation]. The doctrine of estoppel has been applied [1] *where* an *unconscionable injury would result* from denying enforcement after one party has been *induced to make a serious change of position in reliance on the contract* or [2] *where unjust enrichment* would result if a party who has received the benefits of the other's performance were allowed to invoke the statute. [Citations.]" (59 Cal.2d at pp. 409-410, italics added.) ■ There are thus two alternative circumstances in which equitable principles may be applied by a court to estop a promisor from relying on the statute of frauds to avoid an oral agreement to make a will or devise. First, equitable estoppel may apply where the promisor had induced the promisee to make a serious change of position in reliance on the oral agreement, commonly known as "detrimental reliance," and a failure to enforce the oral agreement would have caused an unconscionable injury to the promisee. Alternatively, equitable estoppel may apply where the promisor would be unjustly enriched by receiving the benefit of the promisee's performance if the promisor were allowed to invoke the statute of frauds.

In *Estate of Watson* (1986) 177 Cal.App.3d 569, 573 [223 Cal.Rptr. 14], we observed: "Contracts to make a particular testamentary disposition are valid and enforceable in California. [Citation.] Even when the contract is oral, it may be enforceable by the intended beneficiary under the doctrine of estoppel. [Citation.] The remedy for breach of an agreement to make a will is the imposition of a constructive trust. [Citation.] The remedy is not

[8]We discuss below whether equitable estoppel principles can apply to enforce a post-1984 oral agreement to make a will or devise under section 150.

invalidation of the will; by law, a testator has a right to make any disposition of property he or she chooses and to revoke all prior wills for whatever reason but under a contract may have agreed impliedly to make a certain disposition or not to revoke. [Citations.]" One authority observes that the statute of frauds "has fallen into disfavor" in recent years, quoting from *Sunset-Sternau Food Co.* v. *Bonzi* (1964) 60 Cal.2d 834, 838, footnote 3 [36 Cal.Rptr. 741, 389 P.2d 133]: " 'The commentators almost unanimously urge that considerations of policy indicate a restricted application of the statute of frauds, if not its total abolition.' " (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 261, p. 259.) That authority notes that courts often apply equitable estoppel to preclude invocation of statutes of fraud: "Where the defendant by his words or conduct represents that he proposes to stand by the oral contract, and the plaintiff, in reliance thereon, changes his position, the defendant will be *estopped* to set up the bar of the statute. This exception applies to any of the classes of contracts listed in the statute [of frauds]. [Citations.]" (1 Witkin, *supra*, at § 322, p. 302, original italics.) That authority then describes the doctrine of equitable estoppel: "The oral agreement will be held binding, regardless of the absence of any representation by the defendant [that no writing is required], if (a) the plaintiff, in reliance upon it, has so changed his position that unconscionable injury would be suffered, *or* (b) the defendant, having accepted the benefits of the oral contract, would be unjustly enriched by nonenforcement. Although the plaintiff's change of position could take place without the defendant being unjustly enriched, and vice versa, both elements are so frequently present that the same decisions may be cited on both theories. [Citations.]" (1 Witkin, *supra*, at § 325, p. 305, italics added.) ▪▪▪ Thus, if there are triable issues of whether John and Brian entered into an oral agreement before 1985 pursuant to which Brian would care for and pay living expenses of John in exchange for John's making a will or devise leaving his property to Brian, then equitable estoppel principles are available to enforce any pre-1985 oral agreement found to have been made.[9]

IV

*Equitable Estoppel Principles Continue to Apply
After the Effective Date of Section 150*

Both parties acknowledge that in *Juran* v. *Epstein* (1994) 23 Cal.App.4th 882, 897 [28 Cal.Rptr.2d 588], this court held that section 150 does not preclude the application of equitable estoppel principles to enforce an oral agreement made post-1984 to make or not to revoke a will. However,

---

[9]As we discuss in part V, *post,* Brian has submitted evidence showing there are triable issues of fact as to whether the conditions for application of equitable estoppel have been met.

Barbara contends that *Juran* is not applicable to the instant case and that if *Juran* does not apply, section 150 may not be avoided by equitable estoppel considerations.

## A

In *Juran,* a husband and wife executed mutual wills devising his or her respective property to the surviving spouse and on the surviving spouse's death equally between the husband's daughter and the wife's daughter, both of whom were children of previous marriages. (*Juran* v. *Epstein, supra,* 23 Cal.App.4th at p. 887.) The wife died leaving by will a substantial estate to her surviving husband. (*Ibid.*) Two months after her death the husband revoked his will and executed a new will leaving all property to his daughter as the sole beneficiary. (*Ibid.*) The daughter of the deceased wife sued the husband, alleging he breached an oral agreement with his wife to leave their respective estates to the surviving spouse provided the surviving spouse's estate on his or her death would be divided equally between their daughters. (*Ibid.*) We reversed the trial court's grant of the husband's summary judgment motion and rejected his contention that the enactment of section 150 " 'abolished the doctrine of equitable estoppel' " to enforce an oral agreement in this type of case. (23 Cal.App.4th at pp. 893-897.)

In *Juran,* we stated: *"Examining section 150's statutory language and legislative history, we do not believe the Legislature intended to eliminate a court's authority to apply equitable [estoppel] principles in the area of contracts to make (or not to revoke) a will.* It is a firmly rooted legal principle in this state that ' " '. . . the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting or aiding the party who relies upon it in the perpetration of a fraud . . . .' " ' [Citations.]" (23 Cal.App.4th at p. 894, italics added.) In support of our interpretation of section 150, we reasoned: "To permit a promisor to assert the statute of frauds in the circumstances alleged here would violate these principles. It would allow a promisor to say that although he admitted in his deposition that he agreed orally to be bound by the terms of his will and received substantial benefit because the promisee followed through with her promises, the courts are powerless to enforce such agreement because it was never in writing. We find nothing in the legislative history or language of section 150 showing that the Legislature intended to abrogate long-standing rules that courts have the power to apply equitable principles to prevent a party from using the statute of frauds where such use would constitute fraud." (23 Cal.App.4th at p. 895, fn. omitted.) We further noted that the Legislature did not expressly abrogate the application of equitable estoppel principles in section 150 cases: "Equally important, [the husband]

ignores the well-settled principle that courts should not presume the Legislature intended 'to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication.' [Citations.] The Legislature could have easily stated it intended to abrogate long-established equitable principles. It did not do so." (23 Cal.App.4th at p. 896.) We therefore concluded: "While section 150, subdivision (a) generally provides the sole means under which a party can establish an agreement not to revoke a will, *the Legislature did not express an intent to abolish the use of the equitable estoppel doctrine in appropriate circumstances*. For purposes of the summary judgment motion, [the wife's daughter] proffered sufficient evidence to establish (a) an oral agreement between [the husband and wife] not to revoke their mutual wills; and (b) circumstances supporting the application of the equitable estoppel doctrine. Since there are triable issues of fact as to whether the parties entered into an oral agreement and whether that agreement is enforceable under the equitable estoppel doctrine, the court erred in granting summary judgment." (*Id.* at p. 897, fn. omitted & italics added.) In *Juran,* we clearly held that the Legislature did not abrogate the application of equitable estoppel principles when it enacted section 150.

B

It is true, as Barbara notes, that factors existed in *Juran* which are not present here. We noted in *Juran* that the husband was alive and available to testify regarding the alleged oral agreement. (*Juran v. Epstein, supra,* 23 Cal.App.4th at p. 895.) We also noted in *Juran* that this circumstance avoided any concerns of the Legislature regarding "fabricating promises *by deceased persons.*" (*Ibid.,* original italics.) In enacting section 150 the Legislature presumably considered the concern of the California Law Revision Commission which expressly noted that " '[w]here an oral agreement to make or not to revoke a will is alleged after promisor is deceased and unable to testify, there is an opportunity for the fabrication of testimony concerning the existence of the agreement.' " (23 Cal.App.4th at p. 894, quoting from 16 Cal. Law Revision Com. Rep. (Dec. 1982) p. 2348.)

Unlike in *Juran,* the circumstances here do not necessarily avoid the Legislature's concern with possible fabricated oral agreements alleged after the promisor has died. Because John is deceased and unavailable to dispute the alleged oral agreement, there exists the possibility Brian may have fabricated the agreement. However, despite its concern with such possible fabrications, the Legislature did not abrogate the equitable estoppel doctrine in cases where the alleged promisor was dead. As we noted in *Juran v. Epstein, supra,* 23 Cal.App.4th at page 896, the Legislature did not clearly

show its purported intention to abolish equitable estoppel " 'either by express declaration or by necessary implication.' [Citations.]" On the contrary, nothing in the express language of section 150 addresses the doctrine of equitable estoppel or, more specifically, distinguishes between cases where the promisor is alive and cases where the promisor is dead. Because there is no concrete indication of a legislative intent to change long-established law regarding equitable estoppel, we decline to create such an intention within the words of section 150 to abolish the antifraud doctrine of equitable estoppel.

## C

We also believe that a wholesale elimination of equitable estoppel in cases where the promisor is dead would result in many cases of injustice. Barbara's contention that section 150 precludes equitable estoppel where the promisor is dead, if adopted, would in many legitimate cases of actual oral promises to make wills result in a denial of justice to those trusting promisees who detrimentally relied on the fraudulent promises of a now-deceased promisor who failed to make or revoked the promised will.

To exemplify the possible injustices, one need only review the many cases decided in favor of promisees under Civil Code section 1624(6) which would require a different decision under Barbara's proposed interpretation of section 150. For example, in *Horstmann* v. *Sheldon* (1962) 202 Cal.App.2d 184 [20 Cal.Rptr. 735], a daughter brought an action to establish a trust against the estate of her deceased mother, alleging that " 'on numerous occasions during the period of approximately 20 years prior to the death of decedent, decedent urged and requested [the daughter] to reside with decedent and care for decedent; that decedent offered to [the daughter] that if [the daughter] would so reside with and care for decedent and if [the daughter] would not undertake to obtain regular gainful employment outside the home of decedent, decedent would provide for [the daughter] a home during the lifetime of decedent and would by Will leave the home of decedent, including the real property upon which it was situated, together with the furniture and furnishings therein, to [the daughter].' " (*Id.* at pp. 185-186.) The complaint further alleged that the daughter accepted the mother's offer and " 'resided with decedent and cared for her and for her property for many years immediately and continuously prior to and up to the time of the death of decedent; that during all of the aforesaid period of time decedent reiterated the aforesaid promises on numerous occasions.' " (*Id.* at p. 186.) At trial, the daughter testified effectively to the same facts alleged in the complaint. (*Id.* at p. 187.) Also, five prior wills of the mother were entered into evidence, each of which made some provision for the daughter. (*Ibid.*)

However, the decedent's final will left everything to another person. (*Id.* at p. 186.) The trial court found that the alleged oral agreement existed, and it imposed a trust on the decedent's home and certain personal property for the lifetime of the daughter. (*Ibid.*) The *Horstmann* court found substantial evidence supported the judgment and also concluded that equitable estoppel was properly applied to enforce the oral agreement despite the statute of frauds set forth in Civil Code section 1624(6). (202 Cal.App.2d at pp. 187-189.) The court noted that during the 20-year period between the formation of the oral agreement and the mother's death, the daughter "had been engaged in the performance of her part of the bargain; many of the years of her youth and all of the years of her maturity were spent in the care and maintenance of her mother, as the trial court found." (*Id.* at p. 189.)

The court further noted: "The agreement is breached at a time when [the daughter] is approaching the later years of her life. It can hardly be said that to permit this would not result in unconscionable injury to the [daughter], or the unjust enrichment of the [other person] who by the will of [the mother] is the sole devisee of the property promised to the [daughter].

"Unless the [daughter] is permitted to pursue her remedy in a court of equity she must be relegated to an action at law for damages for the breach of her contract, or pursue her quasi-contractual remedy for the value of services rendered, and neither is adequate for the breach of a contract to leave property by will in exchange for services of a peculiar nature involving the assumption or continuation of a close family relationship. [Citations.]" (202 Cal.App.3d at p. 189.) We strongly doubt that the *Horstmann* court would have decided the case differently under section 150. (See also *Redke* v. *Silvertrust* (1971) 6 Cal.3d 94, 99-100 [98 Cal.Rptr. 293, 490 P.2d 805]; *Walker* v. *Calloway* (1950) 99 Cal.App.2d 675, 676-677 [222 P.2d 455]; *Monarco* v. *Lo Greco* (1950) 35 Cal.2d 621, 622 [220 P.2d 737].)

In *Horstmann*, the mother was deceased at the time of the daughter's action. Here, John was deceased at the time of Brian's action. Both cases involve a parent promisor who is deceased and unavailable to dispute the existence of the alleged oral agreement. Nevertheless, to effect justice, a promisee should not be prevented from showing the existence of a legitimate oral agreement of the promisor to make a will or devise. We conclude that nothing in the language of section 150 precludes the application of equitable estoppel to enforce an oral agreement to make a will or devise in cases where the promisor is deceased, even though the Legislature apparently was concerned with the potential for fabrications of oral agreements where the promisors are deceased and unavailable.

As the California Supreme Court stated in *Seymour* v. *Oelrichs* (1909) 156 Cal. 782, 794-795 [106 P. 88]: "The right of courts of equity to

hold a person estopped to assert the statute of frauds, where such assertion would amount to practicing a fraud, cannot be disputed. It is based upon the principle 'thoroughly established in equity, and applying in every transaction where the statute is invoked, that the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud or in the consummation of a fraudulent scheme.' [Citation.] . . .

"We can see no good reason for limiting the operation of this equitable doctrine to any particular class of contracts included within the statute of frauds, provided always the essential elements of an estoppel are present, . . ."

We recently reaffirmed the universal application of equitable estoppel principles to prevent unfair assertions of a statute of frauds: "Exceptions 'taking the case out of the statute' have traditionally been recognized as to all statute of frauds provisions. Thus, a substantial change of position in reliance on an oral agreement will estop reliance on the statute [citation] . . . ." (*Hall* v. *Hall* (1990) 222 Cal.App.3d 578, 585-586 [271 Cal.Rptr. 773].)

## D

Barbara's proposed interpretation of section 150 as precluding the application of equitable estoppel to enforce oral agreements where the promisor is deceased effectively would deprive *most* defrauded promisees of obtaining appropriate relief. Our review of case law in this area shows that the usual case arises only after the promisor has died without making the promised will or devise or after revoking the promised will or devise.[10] In these cases it is normally premature for a promisee to bring an action before the promisor's death. As the court recently stated in *In re Marriage of Edwards* (1995) 38 Cal.App.4th 456, 460 [45 Cal.Rptr.2d 138]: "Although a contract to make a will may be valid (Prob. Code, § 150), it ordinarily cannot be enforced until after the promisor's death, by imposing a constructive trust on property which the promisor left to others in violation of the contract, a remedy known as quasi-specific performance. [Citations.] A contract to make a will cannot be specifically enforced during the promisor's lifetime, for several reasons. A court cannot compel a person to make a will [citation], and a person has the raw power to amend or revoke a will prior to

[10]In addition to the cases cited above, we have reviewed many other cases applying equitable estoppel where the promisor is deceased, including *Crail* v. *Blakely* (1973) 8 Cal.3d 744, 751-752 [106 Cal.Rptr. 187, 505 P.2d 1027], *Cline* v. *Festersen* (1954) 128 Cal.App.2d 380, 386-387 [275 P.2d 149] and *Sancha* v. *Arnold* (1952) 114 Cal.App.2d 772, 779-780 [251 P.2d 67].

death, even though contrary to agreement. [Citation.] Because the promisor has all of his lifetime to comply with the agreement, ordinarily no breach occurs until death, at which time a cause of action first accrues. [Citations.]"

█ Adoption of Barbara's proposed interpretation of section 150 would result in the wholesale bar of most promisees to enforcing legitimate oral agreements against the estates of those now-deceased promisors who defrauded trusting innocent promisees. Absent clear statutory language in section 150 requiring this result, we decline to adopt this proposed interpretation merely to obviate the Legislature's apparent concern with possible fabricated agreements in these types of situations.

Further, courts have long recognized the possibility of fabricated oral agreements but have refrained from abandoning the doctrine of equitable estoppel simply because of that possibility. █ As the court noted in *Notten* v. *Mensing* (1935) 3 Cal.2d 469 [45 P.2d 198], the burden of proving an oral agreement remains on the promisee and a higher standard of proof applies in these situations: "We are well aware that in such cases the temptation is strong for those who are so inclined to fabricate evidence giving color to the claim that the parties entered into such an oral agreement as is here alleged. On the trial on the merits, the burden rests on the plaintiff to prove the oral agreement by full, clear and convincing evidence. [Citation.]" (*Id.* at p. 477.) █ Therefore, despite the possibility that an oral agreement may be fabricated, we conclude that in its present form section 150 does not preclude the application of equitable estoppel principles where the promisor is deceased.[11] Accordingly, equitable estoppel principles are available under either section 150 or Civil Code section 1624(6) to enforce the type of oral agreement Brian alleged in this case.

V

*Brian Submitted Sufficient Evidence to Raise a Triable Issue of Whether Equitable Estoppel Should Apply*

█ Although equitable estoppel principles may apply in situations like the one here, we believe it is incumbent on the alleged promisee, Brian, to show there is a triable issue of whether equitable estoppel should apply. Brian therefore must submit sufficient evidence to raise triable issues of fact

---

[11]We note that the possibility of a fabrication of an oral agreement similarly exists even when the alleged promisor is still alive. In such cases an alleged promisee can assert that the promisor made an alleged oral agreement, and resolution of the matter may ultimately be determined by the fact finder's weighing of the respective credibility of the alleged promisee and promisor. There can be no assurance that the availability of the alleged promisor to testify will prevent alleged promisees from fabricating oral agreements to make a will or devise, or from ultimately being successful in enforcing such an alleged agreement.

on the elements of a prima facie case for application of equitable estoppel. We conclude Brian has met this burden.

As we observed above, equitable estoppel may apply to avoid the statutes of fraud and to make an oral agreement enforceable if (a) the promisee *detrimentally relied* on the agreement and would suffer an *unconscionable injury* if the oral agreement were not enforced *or* (b) the promisor would receive *unjust enrichment* if allowed to retain the benefit of the promisee's performance without abiding by the promisor's obligations under the oral agreement. (See, e.g., *Day* v. *Greene, supra,* 59 Cal.2d at pp. 409-410.) We believe that Brian's papers submitted in opposition to the summary judgment motion produced sufficient evidence on each prima facie element to raise a triable issue of whether equitable estoppel applies.

Brian submitted evidence showing that an oral agreement existed. In his declaration in opposition to the summary judgment motion, Brian stated in part: "I stayed with my father only because he asked for and needed my help, and there was no one else to take care of him. Many times when we were living together my father would ask me to do something for him and would say that I should do it because he was going to leave everything to me in his will. These expressions became so common that an understanding grew up between us that in exchange for my taking care of him, he would leave everything to me. I cannot point to a specific day when we reached the agreement, but *there is no doubt that he promised me many times that if I would take care of him he would leave all of his property to me when he died.*

". . . . . . . . . . . . . . . . . . . . . . . .

"Over the years my father told me many times that I should help him because he was going to leave all of his property to me." (Italics added.)

Contrary to Barbara's contention, the sole declaration of a party opposing a summary judgment motion which raises a triable issue of fact is sufficient to deny that motion. As Brian notes, Evidence Code section 411[12] generally provides that the testimony of one witness is sufficient to prove any fact. Further, contrary to Barbara's assertion, Code of Civil Procedure section 437c, subdivision (e)[13] does not allow a trial court to weigh the credibility of a declaration submitted by the party opposing a summary judgment motion

---

[12]Evidence Code section 411 states: "Except where additional evidence is required by statute, the direct evidence of one witness who is entitled to full credit is sufficient proof of any fact."

[13]Code of Civil Procedure section 437c, subdivision (e) states: "If a party is otherwise entitled to a summary judgment pursuant to this section, *summary judgment shall not be denied on grounds of credibility* or for want of cross-examination *of witnesses furnishing affidavits or declarations in support of the summary judgment,* except that summary judgment

and then grant the motion, except where the declaration is facially so incredible as a matter of law that the moving party otherwise would be entitled to summary judgment. We conclude that Brian's declaration is not facially incredible as a matter of law, and the trial court should have considered the factual allegations contained in his declaration.

■ Also contrary to Barbara's assertion, the fact that Brian did not specify a date or dates when John allegedly made the oral promises does not preclude the existence of a triable issue on the element of whether the oral agreement did in fact exist. Brian's inability at his deposition to state a specific date or dates when John made these alleged promises or statements does not mean the alleged promises or statements were not made. It is possible that over the course of more than 30 years daily events blended or long-term memory of a particular time period became uncertain. Further, our review of the deposition transcript excerpts shows that Barbara did not take the opportunity to narrow the time period or periods by asking Brian to give his best recollection of the general time periods in which the alleged promises or statements were made. Thus, Brian's declaration sufficiently raised a triable issue of whether the alleged oral agreement existed. The basic agreement alleged was that John would leave all of his property to Brian in his will or trust if Brian would care for him during John's lifetime.

Brian also submitted evidence showing that he detrimentally relied on John's alleged promise or oral agreement. Brian's declaration shows that he lived with John for almost 30 years, provided John with care and companionship, and during the 5-year period after Brian moved out Brian continued to care for John daily by picking him up after work and taking him to Brian's home for dinner. Further, after initially sharing living expenses, Brian paid an increasing proportion of John's living expenses to the point where John paid only his property taxes. Brian's "reliance" on John's promise is shown by Brian's statements in his declaration: "I stayed with my father only because he asked for and needed my help . . . . I would not have taken care of him and paid his expenses if he had not promised me that he would leave all of his property to me in his will and trust.

" . . . . . . . . . . . . . . . . . . . . . . . . .

---

may be denied in the discretion of the court, where the only proof of a material fact offered in support of the summary judgment is an affidavit or declaration made by an individual who was the sole witness to that fact; or where a material fact is an individual's state of mind, or lack thereof, and that fact is sought to be established solely by the individual's affirmation thereof." (Italics added.) The entire focus of this statutory language is on the affidavits and declarations submitted by the moving party, not those submitted by the opposing party. The statute effectively provides that the questionable credibility of declarations submitted in support of a summary judgment motion cannot provide a basis for denying the motion when it otherwise should be granted.

"I would not have put up with him for so long if I had known that he [was] not going to do so."

Brian submitted sufficient evidence to raise a triable issue of whether he detrimentally relied on John's alleged promise or oral agreement.

Brian also submitted evidence showing that he would suffer an unconscionable injury if the alleged oral agreement were not enforced. Brian allegedly provided care and companionship to his presumably "difficult" and cantankerous father for a period of 35 years in reliance on his father's promise to leave all of his property to Brian on his death. This period of care and companionship far exceeded the four-month period involved in *Walker*, *supra*, 99 Cal.App.2d 675, and the twenty-year period in *Horstmann*. In *Walker*, the period of time was sufficient for the court to overrule a demurrer; in *Horstmann*, the period of time supported the court's application of equitable estoppel and its judgment in the promisee's favor. We conclude there is a triable issue of whether Brian would suffer an unconscionable injury if the alleged oral agreement is not enforced.

Brian also submitted evidence showing that his father and the named beneficiaries of his father's will and trust would be unjustly enriched if the statute of frauds were applied to deny enforcement of the oral agreement. Brian's declaration shows he provided John with care and companionship for 35 years. Over the years John allegedly received a substantial benefit financially and, more importantly, emotionally in the form of intangible personal services. Although Brian may have received some financial benefit by living in John's house "rent-free" as Barbara asserts, there is nevertheless a triable issue of whether this benefit to Brian outweighs the benefits received by John over the years. In any event, we doubt such an offset can be made because cases hold that care and companionship provided by family members cannot adequately be quantified to make a monetary comparison. (See, e.g., *Horstmann* v. *Sheldon*, *supra*, 202 Cal.App.2d at p. 189.)[14]

In opposing Barbara's summary judgment motion, Brian submitted sufficient evidence to make a prima facie case for the application of equitable

---

[14]Barbara also asserts that Brian failed to produce sufficient evidence to make a prima facie case for equitable estoppel because he provided John with no care and support from April 1, 1994, through May 18, 1994, the date of John's death. However, this period was only a small fraction of the entire 35-year period during which Brian allegedly provided John with care and companionship. Given John's alleged threats to shoot Brian, one cannot fault Brian for discontinuing the care of his father. John's threats could be viewed as prevention of Brian's performance, thereby excusing further performance by Brian of the alleged agreement. At best, this factor raises a triable issue of fact as to whether Brian substantially performed his part of the oral agreement to permit application of equitable estoppel to enforce the oral agreement.

estoppel to enforce the alleged oral agreement. Because there is a triable issue of fact concerning the application of equitable estoppel, the trial court erred by granting the motion for summary judgment. Accordingly, we reverse the summary judgment for Barbara.[15]

## DISPOSITION

The judgment is reversed and remanded for further proceedings consistent with this opinion. Appellant shall recover his costs of appeal.

Benke, Acting P. J., and Nares, J., concurred.

---

[15]Our opinion should not be construed as an expression of our view on the ultimate merits of this action.