Filed 9/30/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| Conservatorship of the Person and Estate of LESTER MOORE. | 2d Civil No. B253538 (Super. Ct. No. 56-2010-00387487-PR-CP-OXN Consolidated with No. 56-2011-00391417-PR-TR-OXN) (Ventura County) |
| ANGELIQUE FRIEND, as Conservator and Trustee, etc., Petitioner and Respondent, v. WILLIAM SALZWEDEL, Objector and Appellant. | |

Retained counsel for an elderly person suffering from dementia must safeguard the well-being of the person and his or her financial resources. As we shall explain, here the attorney did neither. The probate court expressly indicated that counsel put his own financial interests ahead of the interests of his client. It surcharged counsel. We agree with the probate court's ruling and its rationale. We commend it. We affirm the judgment.

Attorney William Salzwedel appeals a $96,077.14 judgment surcharging him for excessive attorney's/trustee's fees ($70,044.99), medical expert fees ($25,015.13), and costs ($1,017.02) incurred while acting as the temporary trustee of the Moore Family Trust. Appellant paid himself fees and costs after his 82 year old client, Lester Moore, was diagnosed with dementia and the subject of a conservatorship petition. Appellant

hired medical experts to oppose the conservatorship petition and drafted trust and estate documents to disinherit Moore's family.  Sitting as the trier of fact, and exercising its broad discretion, the probate court found that the fees and expenses were unreasonable and did not benefit the trust or Moore.

Appellant has no appreciation for the traditional rules on appeal.  (See e.g., *Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1448-1450, *In re Marriage of Greenberg* (2011) 194 Cal.App.4th 1095, 1099.)  He contends, among other things, that the probate court used the wrong standard in determining the reasonableness of his fees and expenses.

*Facts and Procedural History*

In 1993, Lester Moore and his wife, Lou Dell Moore, created the Moore Family Trust naming their daughter, Poppy Helgren, remainder beneficiary.  After Lou Dell Moore died in 2001, Moore signed a Durable Power of Attorney appointing Helgren as his attorney-in-fact.

After Moore's treating physicians notified Helgren that Moore suffered from dementia and lacked the capacity to handle his affairs.  Helgren discovered that Moore was giving large sums of money to his girlfriend, Lieselotte Kruger.  When Helgren brought this to Moore's attention, he accused Helgren of stealing trust money.  Moore hired appellant to file an elder abuse petition and amend his estate plan.

In October of 2010, appellant had Moore sign the following documents: (1) a partial revocation and modification of the Trust, naming appellant as temporary successor trustee of the Trust;   (2) Moore's resignation as trustee;  and (3) a Durable Power of Attorney appointing appellant as Moore's attorney-in-fact.  The next day, appellant sent Helgren a letter accusing her of violating trustee duties.  Helgren provided an accounting which showed that no funds were misappropriated.

In December of 2010, Helgren filed a petition for conservatorship. (Ventura County Super Ct., Case No, 56-2010-00387487-PR-CP-OXN.  A few months later, She filed a second petition to determine Moore's capacity to execute the estate planning documents (Ventura County Super Ct., Case No. 59-2011-00391417-PR-TR-OXN).

2

The probate court consolidated the petitions and appointed attorney Lindsay Nielson as receiver to inventory Moore's property and trust assets. Appellant submitted billings for fees and expert witness expenses to the receiver who paid the bills but voiced concerns about the amount charged. In February of 2012, the court appointed Senior Deputy Public Defender Mary Shea as co-counsel for Moore and, appointed respondent Angelique Friend, a professional fiduciary, as temporary conservator of Moore's person and estate. Immediately upon her appointment, Friend terminated appellant as Moore's attorney.

In May of 2012, the probate court removed appellant as trustee, appointed Friend as the new temporary successor trustee of the Trust, and ordered appellant to render a trust accounting. (Prob. Code, § 15642.) Before he was removed as trustee, appellant paid himself $148,015.11 in "trustee's fees."

Appellant filed a petition to settle his accounting to which Friend and Helgren objected. (Prob. Code, § 17200, subd. (b)(5))[1] Before the evidentiary hearing, the trial court ruled that the trustee's fees ($148,015.11) were disapproved absent a showing that the services benefited Moore in the sums charged and a showing that Moore had the capacity to contract for and approve the fees when the services were rendered. With respect to the medical expert expenses ($28,452.63), the probate court ruled that "[t]hese professional fees are expressly disapproved absent an affirmative showing by [appellant] that the charged 'medical' services benefited Mr. Moore in the sums charged." The probate court noted that the accounting listed $474,348.01 in opening inventory and cash receipts and that appellant paid himself $148,105.11 in fees, "or 31.22% of the conservatee's reported trust estate, . . . plus another $32,288.21, or another 6.81% of the conservatee's reported trust estate, in related 'professional' and litigation fees."

---

[1] All statutory references are to the Probate Code unless otherwise stated.

*Reasonable Fees and Expenses*

We review the surcharge order utilizing the abuse of discretion standard. (*Donahue v. Donahue* (2010) 182 Cal.App.4th 259, 268-269 (*Donahue*); see also Estate of *Gilkison*, *supra,* 65 Cal.4th at pp. 1448-1449.) As trustee, appellant was charged with the responsibility of incurring fees and expenses that were reasonable in amount and appropriate to the purposes of the trust. (*Donahue v. Donahue, supra,* at p. 268.) "Long-established principles of trust law impose a double-barreled reasonableness requirement: the fee award must be reasonable in amount and reasonably necessary to the conduct of the litigation, but it also must be reasonable and appropriate *for the benefit of the trust.*" (*Id.,* at p. 363.)

Appellant contends that the trial court applied the wrong standard in reviewing his fees because he was retained before Moore's mental capacity was adjudicated in the conservatorship proceeding. Appellant claims that Moore had the autonomous and unfettered right to decide what services would be provided and that appellant was duty bound to zealously act on Moore's personal wishes. By this theory, there could be no probate court review of his fees.

We reject these arguments because appellant, acting in a trustee capacity, paid the fees and expenses with trust funds. Appellant could not put on "horse blinders" and follow the orders of a client who he knew, even before formal adjudication, suffered from mental impairment.[2] In order to approve the trustee accounting, the trial court had to determine the reasonableness of the fees and expenses. (§ 17200, subd. (b)(9) & (b)(21); *Donahue, supra,* 182 Cal.App.4th at p. 269.) "[A] spare-no-expense strategy calls for close scrutiny on questions of reasonableness, proportionality and trust benefit. 'Consequently, where the trust is not benefited by litigation, or did not stand to be benefited if the trustee had succeeded, there is no basis for the recovery of expenses out of the trust assets' [Citation.]" (*Id.*, at p. 273.) As trustee, the burden was on appellant to

---

[2] At oral argument, appellant stated that as an attorney, he was better suited than the treating physicians to opine on Moore's mental capacity.

show that he subjectively believed the fees and expenses were necessary or appropriate to carry out the trust's purposes, and that his belief was objectively reasonable. (*Id.*, at p. 268; *Conservatorship of Lefkowitz* (1996) 50 Cal.App.4th 1310, 1314.*)*

Substantial evidence supports the finding that the fees were unreasonable. Appellant drafted an elder abuse petition that was never filed, prepared trust amendments and estate planning documents that were not signed or filed, billed the trust to educate himself on conservatorship law, and failed to keep adequate time records. Appellant had little, if any, experience in conservatorship matters or in acting as a trustee.

The expert witness expenses ($27,515.13) were also excessive. Appellant retained Edward Hyman, Ph.D., a psychologist, from Northern California who billed at the rate of $495 an hour. Doctor Hyman charged $6,000 for travel time and billed 23.25 hours ($11,508.75) on January 6, 2012 for "report writing" and a psychological assessment. The trial court found that appellant could have hired an medical expert from UCLA to make the psychological evaluation for $2,500.[3] Appellant also paid a "celebrity psychiatrist," Dr. Carole Lieberman, $7,500 to evaluate Moore but the doctor never wrote a report or testified. In an e-mail, appellant admitted that Doctor Lieberman's fees were shocking and that Doctor Hyman's travel fees were an embarrassment. Appellant paid another attorney-doctor, Alan Abrams, $3,000 to review some medical records. The trial court found that $2,500 was a reasonable fee for Moore's psychological evaluation and that "everything else was wasted money and wasted time . . . ." No abuse of discretion occurred. "Probate courts have a special responsibility to ensure that fee awards are reasonable, given their supervisory responsibilities over trusts." (*Donahue, supra*, 182 Cal.App.4th at p. 269.)

---

[3] Appellant, in his reply brief, contends that the trial court erred in denying the creditor's claim of Edward Hyman, Ph.D. for $24,704.16 in additional fees. The issue was not raised in appellant's opening brief and is deemed forfeited. (*Peninsula Guardians, Inc. v. Peninsula Health Care Dist.* (2008) 168 Cal.App.4th 75, 86, fn. 6; *SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 573.)

The probate court factually found that appellant "was predominately fighting for his own economic interest, and was not fighting for Mr. Moore's rights. . . . [Appellant] prevailed upon Mr. Moore, who was a senior with conceded memory issues and prior dementia diagnoses to engage counsel. In that context, [appellant] infused himself as the trustee of the Moore Family Trust, infused himself as the agent under a Power of Attorney signed by Mr. Moore, and infused himself as the attorney for Mr. Moore with a perceived license to utilize as much of the estate as necessary to satisfy [appellant's] vision of what fighting is all about, as opposed to the propriety of serving the needs of a prospective and possible conservatee. [¶] Ultimately, even during the conservatorship proceedings, [appellant] was drafting testamentary documents for signature by Lester G. Moore which would have had the effect of disinheriting his own family in favor of one of [appellant's] allies."

Appellant contends that Moore "approved" the fees and that it operated as a partial revocation of the trust each time a bill was paid by appellant or the receiver. We reject the argument because there is no evidence that Moore, whether of sound mind or not, approved any of the fees or expenses. The attorney-client relationship with Moore did not give appellant carte blanche authority to pay himself excessive fees. "A trustee's power to incur expenses is limited to those expenses which are reasonably necessary or appropriate to carry out the purposes of the trust. [Citation.]" (*Conservatorship of Lefkowitz, supra,* 50 Cal.App.4th at p. 1314.)

Appellant claims that he had a duty to follow the instructions of the conservatee no matter what the cost or expense. By this theory, he could have spent the entire trust corpus "fighting" the conservatorship petition. Appellant had Moore modify the trust and name appellant temporary successor trustee of the Trust. As Moore's trustee and attorney, appellant had a duty not to charge excessive fees and expenses. (Cal. Rules of Professional Conduct, Rule 4-200(A) [attorney may not charge unconscionable fee]; Rule 5-310(B)(3) [attorney may not pay unreasonable fee for professional services of an expert witness].) Appellant's trust accounting shows that the fees and expenses were

6

excessive. In the words of the probate court, "you're talking about an attorney broaching elder abuse and that disturbs me a lot."

*Exclusion of Girlfriend's Testimony*

Appellant claims that Moore consented to the fees because billing copies were mailed to Moore's house and Moore never objected to the amounts charged. Receipt of the bills, however, does not mean that Moore approved the fees or that the fees were reasonable. Moore suffered from dementia and was an unavailable witness. At trial, Moore did not even know who appellant was!

Appellant argues that the trial court abused its discretion in excluding the testimony of Moore's girlfriend, Kruger, who was allegedly present when Moore received the bills. The trial court ruled that Kruger's testimony was not relevant "[b]ecause the Court is determining the reasonableness [of the fees]. It is not Mr. Moore who is determining the reasonableness." When asked for an offer of proof as to the relevance of Kruger's testimony, he could not make one.

Appellant now asserts that Kruger's testimony would show Moore's state of mind or emotion (Evid. Code, § 1250) and show implied approval of the fees (Evid. Code, § 1261). The argument conflates Moore's intent, plan, motive and feelings with Moore's mental capacity to enter into the attorney-client contract. It is not an issue. Before trial, the parties agreed that appellant had a good faith belief that an attorney-client relationship existed and asked the trial court to determine the reasonableness of the fees and medical expert expenses.

Appellant also now argues that Moore's statements to Kruger are admissible under Evidence Code section 1261, subdivision (a) which provides in pertinent part: "Evidence of a statement is not made inadmissible by the hearsay rule when offered in an action upon a claim or demand against the estate of the declarant if the statement was made upon the personal knowledge of the declarant at the time when the matter had been recently perceived by him and while his recollection was clear." Appellant made no offer of proof that Moore verbally approved the fees or that his statement was trustworthy, i.e.,

7

made when the matter has been recently perceived by Moore "and while his recollection was clear." (See *Estate of Luke* (1987) 194 Cal.App.3d 1006, 1017.)

### *Findings Concerning Moore's Intent*

Appellant argues that the probate court should have made findings concerning Moore's wishes and objectives in hiring appellant. But such an inquiry is irrelevant. The focus of the hearing was whether the fees and expenses were reasonable and benefited the trust. (*Donahue, supra,* 182 Cal.App.4th at p. 275.) The wishes or objectives of Moore, who suffered from dementia, did not trump appellant's duty to prudently spend trust money and avoid conflicts of interest with the trust.

### *Multiple Billing*

Where the trustee is an attorney, the general rule is that the trustee can receive compensation either for work as a trustee, or for work performing legal services for the trustee, but not both. (Hartog & Kovar, Cal. Trust Litigation, (LexisNexis 2014) § 14.25[1][a], p. 14-32.) Section 15687, subdivision (a) prohibits a trustee who is an attorney from receiving compensation for both trustee services and legal services unless the trustee obtains advance approval from the court. (See Ross & Cohen, Cal. Practice Guide, Probate (The Rutter Group2014) ¶ 1:26,2, p. 1-19.) Appellant did not obtain such approval.

### *Block Billing*

Appellant billed at the same hourly rate regardless of whether it was for attorney services, a trustee activity, or tending to Moore's personal matters (i.e., scheduling medical appointments, caretaker services, driving lessons, etc.). The probate court imposed a five percent surcharge because the block billing failed to identify what services were provided and the time for each task.

Appellant argues that he was denied due process because he did not know until the last day of trial that the block billing would be a basis for the surcharge order. Appellant, however, did not object on due process grounds and is precluded from raising the issue on appeal. (See e.g., *People v. Benson* (1990) 52 Cal.3d 754, 788 [defendant waived due process challenge by failing to make constitutional objection at trial].) Any

8

other rule would permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware. (*In re Aaron B.* (1996) 46 Cal.App.4th 843, 846.)

On the merits, appellant was on notice that his billings were a problem. Before trial, objections were raised by the receiver, the court auditor, and respondent. In a 2011 e-mail, the receiver stated that he would not approve "billings with just hours appearing. . . . [¶] Frankly, I don't know how you are able to segregate the work you are doing to represent Mr. Moore individually and the Moore Trust." In a second e-mail, the receiver told appellant to be "very judicious in billing your time" and "to break out what is spent actually lawyering for the trust (actual legal work); what is spent being trustee (investments, bill paying, etc.) and what is spent on personal services for Mr. Moore (i.e., driving him to the doctor, bank, and other non-legal services)."

The probate court, in a pre-hearing order, found that the accounting was disorganized and "does not come close to complying with accepted statutory format. . . ." It asked to see the time sheets. Appellant argued that "my services, my billing statements, when I did everything, that's private . . . . " Appellant was afforded a three day evidentiary hearing but failed to clarify what services were provided and the time spent on each task. (See Hartog & Kovar, Cal. Trust Litigation, *supra,* § 14.04[4], p. 14-10 [trustee's billing should include a detailed description of the tasks performed, an explanation of how the tasks benefited the trust, and time sheets and logs].)

*Request for Reconsideration*

Denying appellant's motion for "new trial," the probate court found that appellant had notice of the substance of the proceeding well in advance of the hearing. "Given the nature of the testimony and evidence before the court, it was impossible, because of the lack of presentation of detailed billing records, to precisely excise inappropriate time. The best that could be done was to construe a framework. This was done by counsel in closing argument, and the court found this to be an acceptable methodology. The statute requires that the objection [be] made at trial, which it was not."

9

Appellant argues that the surcharge is tantamount to a constructive fraud judgment and violates his due process rights because he did not know he had the burden of proving Moore's mental capacity to consent to the fees. But all of that was spelled out in the pre-hearing order. The court ruled that appellant's fees ($148,015.11) were disapproved absent a showing that the services benefited Moore and a showing that Moore had the capacity to contract for and approve the fees when the services were rendered. The pretrial order states: "The accounting will be set for evidentiary hearing on the aforementioned issues and to surcharge [appellant] for any sums which Mr. Moore's estate has been unnecessarily charged, improperly charged or overcharged." Appellant was provided a three day hearing. Like any trustee, the burden was on appellant to itemize his fees and expenses and show they were reasonable.

## Standing

Appellant claims that Helgren lacked standing to object to the accounting and it was a "procedural error" to allow Helgren to participate in the trial. As a remainder beneficiary, appellant was an interested party and had the right to object to the accounting. (See §§ 24, subd. (c); 17200, subd. (a); *Estate of Giraldin* (2012) 55 Cal.4th 1058, 1076.)

## Conclusion

Appellant was repeatedly warned that he had a conflict of interest acting as trustee and as the attorney for a mentally impaired client in a conservatorship proceeding. Appellant had never served as a trustee or been involved in a conservatorship before but perceived it as a license to zealously fight for Moore no matter what the cost. The probate court remarked that conservatorship proceedings are "not about fighting. It's about doing the right thing. And [appellant] lost sight of doing the right thing . . . . "

At the evidentiary hearing, appellant complained that "the Court, and the parties seem[] to be focused on just the reasonableness of the fees, but you don't even get to . . . . [Y]ou can't second guess my fees now, he [i.e., Moore] approved of them, and he didn't complain. . . ." Appellant makes the same argument on appeal. Trustee accountings are not a game of hide and seek. Section 17200, subdivision (b)(9) requires

10

that probate courts review the reasonableness of a trustee's compensation.  When presented with a section 17200 petition to settle an account, 'the probate court has a duty *imposed by law* to inquire into the prudence of the trustee's administration.'  [Citations.]" (*Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 427.)

Appellant's remaining arguments have been considered and merit no further discussion.

The judgment (surcharge order) is affirmed.  Respondent is awarded costs on appeal. The clerk of the court is ordered to transmit a copy of this opinion to the California State Bar.  Whether appellant should be disciplined is addressed to the State Bar and we express no opinion thereon.

CERTIFIED FOR PUBLICATION


YEGAN, J.


We concur:


GILBERT, P.J.


LUI. J.*


*Associate Justice, Court of Appeal. Second District, Division One, assigned by the Chief Justice.

11

Glen M. Reiser, Judge

Superior Court County of Ventura

_____

William A. Salzwedel, in pro per, Appellant.

Thomas E. Olson. for Angelique Friend, Respondent.

No appearance for Poppy Helgren, Respondent.