Filed 6/30/21  Goodwin v. Goodwin CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ROCKY LEE GOODWIN, et al., <br><br>  Plaintiffs and Respondents, <br> v. <br> MERLIN W. GOODWIN, JR., as Trustee, etc., <br><br>  Defendant and Appellant. | A157499 <br><br> (Humboldt County <br> Super. Ct. No. DR130381) |

A trustee appeals two trial court rulings: (1) that certain trust property belongs to one of the settlors' children pursuant to an oral contract, and (2) denying the trustee's request for reimbursement of attorney fees from the trust estate.  We reverse the latter ruling in part and otherwise affirm.

BACKGROUND

This case involves a family dispute over certain real property known as "Moose Ranch," which was originally owned by Merlin "Buddy" Goodwin, Sr., and Billie Lee Goodwin.[1]  Buddy and Billie had four children: Rocky, Merlin, Tamara, and Gary.  Buddy died in 2007.  In 2011, Billie created the Billie Lee

---

[1] Like the trial court and the parties, we refer to Merlin Goodwin, Sr., by his nickname, Buddy, and to the other members of the Goodwin family by their first names.  No disrespect is intended.

Goodwin Revocable Trust (the Trust). The Trust property included Moose Ranch as well as other real and personal property. The Trust provided that, upon Billie's death, Rocky was to receive a 90 percent interest in Moose Ranch and Tamara was to receive the remaining 10 percent interest. After the distribution of other specific bequests, the remainder of the Trust estate would be divided equally among the four children.

In 2013, Rocky and his wife Sarah (collectively, Plaintiffs) sued Billie, individually and in her capacity as trustee of the Trust. The complaint alleged Billie and Buddy made an oral agreement with Plaintiffs decades earlier that, if Plaintiffs lived on Moose Ranch and maintained and improved the property, Billie and Buddy would transfer title to Plaintiffs when they died. The complaint further alleged Billie recently breached that agreement by listing the property for sale and directing Plaintiffs to leave.

Billie filed a cross-complaint alleging claims for infliction of emotional distress, waste, and conversion, and seeking a declaratory judgment that Plaintiffs were tenants of Moose Ranch. Billie also executed an amendment to the Trust disinheriting Rocky and providing that Moose Ranch be sold upon Billie's death with the proceeds divided between Merlin, Tamara, and Gary.

Billie died shortly thereafter. Merlin became successor trustee to the Trust (Trustee) and continued to defend against the complaint and prosecute the cross-complaint in that capacity.

Plaintiffs filed a petition against Merlin, individually and as Trustee, as well as Tamara and Gary. The petition contested the Trust amendment, alleging it was the result of undue influence or fraud in the inducement by Merlin, Tamara, and Gary. The petition also alleged claims for elder abuse, interference with contractual relations, and conspiracy to induce breach of

2

contract, seeking damages for these claims. The petition was consolidated with the complaint and cross-complaint.

In 2018, a bench trial on all the pleadings was held. After Plaintiffs' case-in-chief, the court granted Trustee's motion for judgment on the pleadings on Plaintiffs' petition. At the conclusion of the trial, the court issued a lengthy statement of decision finding for Plaintiffs on the complaint and cross-complaint. Among other findings, the trial court found: "Circa 1985-86, Buddy and Billie made an offer to Rocky and Sarah to by deed or testamentary disposition give to them the Moose Ranch if Rocky and Sarah would move to and become resident caretakers of the property; [¶] 2. Rocky and Sarah accepted that offer and moved to and assisted in caring for the property, including participating in rehabilitation and maintenance of the two residences, management of cattle, fences, and roads, continuously since 1986. [¶] 3. Rocky and Sarah fully performed their side of the bargain and thus, Billie, having survived Buddy, was obligated to transfer Moose Ranch to them; [¶] 4. Billie failed to transfer the Moose Ranch to Rocky and Sarah prior to her death or by her estate plan; [¶] 5. A contract existed which was breached by Billie, the surviving promisor, and Plaintiffs are entitled to specific performance." The trial court rejected Trustee's affirmative defenses.

Subsequently, Trustee filed a motion requesting reimbursement of his attorney fees from the Trust. The court declined to so order.

DISCUSSION

I.    *The Oral Agreement*

Trustee argues the trial court erred in rejecting various defenses to Plaintiffs' contract claim. We disagree.

3

A.     *Statute of Frauds*

"The statute of frauds provides that certain contracts 'are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged . . . .' (Civ. Code, § 1624.)" (*Sterling v. Taylor* (2007) 40 Cal.4th 757, 761.)  "Equitable estoppel may preclude the use of a statute of frauds defense." (*Byrne v. Laura* (1997) 52 Cal.App.4th 1054, 1068 (*Byrne*).)  Specifically, "equitable estoppel may apply to avoid the statutes of fraud and to make an oral agreement enforceable if (a) the promisee *detrimentally relied* on the agreement and would suffer an *unconscionable injury* if the oral agreement were not enforced *or* (b) the promisor would receive *unjust enrichment* if allowed to retain the benefit of the promisee's performance without abiding by the promisor's obligations under the oral agreement." (*Estate of Housley* (1997) 56 Cal.App.4th 342, 359 (*Housley*).)  "Whether the doctrine of equitable estoppel should be applied in a given case is generally a question of fact." (*Byrne,* at p. 1068.)[2]

The trial court found, with respect to this defense: "Plaintiffs' long residence at and caretaking of the Moose Ranch operates to relieve the requirement of a writing; Plaintiffs' performance of that which was asked of them by decedents in reliance on the promises of decedents to their detriment constitutes consideration and serves to estop Defendant from reliance on the Statute of Frauds," and "Plaintiffs' full performance for decades of that which promisor-decedents required of them satisfies the Statute of Frauds and no writing is required; absent enforcement of the contract Defendants would be

_____

[2] Trustee relies on inapposite authority that application of the statute of frauds is a question of law.  The issue before us is whether Trustee is equitably estopped from invoking the statute of frauds.

4

unjustly enriched and Plaintiffs would suffer substantial hardship and unconscionable injury."

Trustee first argues the trial court applied the wrong legal standard because the promisor's fraud is an element of equitable estoppel. The cases relied on by Trustee make clear that to the extent "fraud" is required, intent to deceive need not be shown; instead, the requirement is satisfied by demonstrating an unconscionable injury. (*Parker v. Solomon* (1959) 171 Cal.App.2d 125, 132 [" 'The doctrine of estoppel to assert the statute of frauds has been consistently applied by the courts of this state to prevent fraud that would result from refusal to enforce oral contracts in certain circumstances. Such fraud may inhere in the unconscionable injury that would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract [citations], or in the unjust enrichment that would result if a party who has received the benefits of the other's performance were allowed to rely upon the statute.' "]; *Notten v. Mensing* (1935) 3 Cal.2d 469, 476 ["In order to raise the estoppel, fraud in some form is essential, but it is not required that an actual intent to defraud or mislead exist . . . . 'All that is meant in the expression that an estoppel must possess an element of fraud is that the case must be one in which the circumstances and conduct would render it a fraud for the party to deny what he had previously induced or suffered another to believe and take action upon. . . . There need be no precedent corrupt motive or evil design.' "]; see also *Stahmer v. Schley* (1979) 96 Cal.App.3d 200, 203–204 ["No intent to defraud on the part of the [parties asserting the statute of frauds] is necessary to create the estoppel. It suffices that a constructive fraud will result if these [parties] are permitted to invoke the statute of frauds."].) Accordingly, the trial court applied the correct legal standard.

5

Trustee also argues the evidence did not establish detrimental reliance or unconscionable injury.[3] In *Housley,* the plaintiff submitted evidence that his father promised to leave all his property to the plaintiff if the plaintiff "would care for him during [the father's] lifetime" and, in reliance on this promise, the plaintiff "lived with [his father] for almost 30 years, provided [his father] with care and companionship, and . . . paid an increasing proportion of [his father's] living expenses." (*Housley, supra,* 56 Cal.App.4th at p. 360.) The Court of Appeal held this evidence, if believed by the trier of fact, was sufficient to establish detrimental reliance and unconscionable injury. (*Ibid.*) In *Byrne,* the plaintiff submitted evidence that she "relied on [the decedent's] assurances that she would receive his property and that he would document this understanding," and that she "had 'seriously' changed her position in reliance on [these] promises by moving in with him, performing the duties of a spouse, and retiring from her job at his insistence." (*Byrne, supra,* 52 Cal.App.4th at p. 1069.) The Court of Appeal held the trier of fact could find, based on this evidence, that the plaintiff established detrimental reliance and unconscionable injury. (*Ibid.*)

The trial court found, based on the evidence at trial, that Plaintiffs moved to Moose Ranch in 1986 and lived there continuously since, Plaintiffs expended substantial labor and money on maintaining and improving the property, and Plaintiffs did so only because of Buddy and Billie's promise that they would give Plaintiffs Moose Ranch either before or upon their death. As in *Housley* and *Byrne,* this evidence is sufficient to support the

---

[3] To the extent Trustee argues the trial court found only detrimental reliance and not unconscionable injury, the statement of decision establishes otherwise.

court's findings that Plaintiffs established detrimental reliance and unconscionable injury.

Trustee argues Plaintiffs received a benefit by living at Moose Ranch because they paid reduced rent. In *Housley,* the court found the fact that the plaintiff "may have received some financial benefit by living in [his father's] house 'rent-free' " would only preclude the application of equitable estoppel if "this benefit to [the plaintiff] outweighs the benefits received by [his father] over the years." (*Housley, supra,* 56 Cal.App.4th at p. 360.) As an initial matter, although Trustee asserts the rent paid by Plaintiffs was reduced, he provides no record citations to any evidence of the market rental value. In addition, Plaintiffs testified their labor and expenditures on the property was worth approximately $900,000; although the trial court found this figure "exaggerated" it still found they performed substantial work and improvements on the property. Finally, the court found the benefits to Buddy and Billie included "p[ea]ce of mind" and "a great comfort" in knowing that Plaintiffs were maintaining the property. (Cf. *Housley, supra,* 56 Cal.App.4th at p. 360 ["cases hold that care and companionship provided by family members cannot adequately be quantified to make a monetary comparison"].) Trustee has not demonstrated the trial court's application of equitable estoppel lacked substantial evidence.

Finally, Trustee notes that Tamara also lived at Moose Ranch, paid reduced rent, and performed improvements, arguing this shows there was no detriment to Plaintiffs. Tamara's testimony was that she lived at Moose Ranch for less than eight years, and Trustee cites no evidence that she made any commitment to Buddy and Billie with respect to the property. The trial court could reasonably find detrimental reliance resulting from Plaintiffs'

long tenure of more than 30 years and commitment to remain on the property, regardless of Tamara's situation.

In sum, the trial court's finding that Trustee was equitably estopped from invoking the statute of frauds is supported by substantial evidence.

B.    *Statute of Limitations*

Trustee argues Plaintiffs' contract claim was barred by the statute of limitations because their lawsuit was filed more than two years after Billie transferred Moose Ranch to the Trust.  (Code Civ. Proc., § 339 [two year limitations period for oral contract claim].)

"[T]he '[g]eneral [r]ule' [is] that a contract cause of action runs from the date of the breach.  [Citation.] . . . [A] breach of contract ordinarily occurs upon the promisor's *failure to render the promised performance*."  (*McCaskey v. California State Automobile Assn.* (2010) 189 Cal.App.4th 947, 958.)  "[A] repudiation may constitute an *anticipatory* breach, giving the aggrieved promisee the *option* of suing immediately.  [Citation.]  But it does not accelerate the accrual of a cause of action for limitations purposes; the promisee remains entitled to wait until performance is due and the promisor has failed to perform, i.e., to do the thing promised."  (*Ibid.*)

The Trust, by its terms, could be revoked or amended by Billie.  To the extent Billie's transfer of Moose Ranch to the Trust constituted a repudiation of the oral agreement to transfer the property to Plaintiffs on or before her death, the breach was anticipatory only and did not trigger the statute of limitations.

C.    *Unenforceable Gift*

Trustee argues Buddy and Billie's promise to Plaintiffs was not an oral contract, but instead was an unenforceable gift.

"It is basic that what distinguishes a contract from a gift is that the latter only takes place in the absence of consideration." (*In re Marriage of Mehren & Dargan* (2004) 118 Cal.App.4th 1167, 1172.) Confusingly, Trustee argues the purported gift was unenforceable because there *was* consideration. The trial court found the elements of an oral contract established; Trustee's argument that the promise was not an enforceable gift does not demonstrate error in this finding.

D.    *Laches*

Trustee argues laches should have barred Plaintiffs' claim because Plaintiffs unreasonably delayed in bringing suit after Billie transferred Moose Ranch to the Trust. The trial court found no credible evidence supporting the application of laches.

"A party asserting laches must show both unreasonable delay and prejudice resulting from the delay. [Citation.] A trial court's ruling regarding laches will be sustained if there is substantial evidence to support it." (*Martin v. Santa Clara Unified School Dist.* (2002) 102 Cal.App.4th 241, 257.) Trustee makes no argument whatsoever regarding prejudice. In addition, Rocky testified that after Billie transferred Moose Ranch to the Trust, she assured him, " 'Don't worry. I'm going to change it before I die. You guys are getting the place . . . .' " Accordingly, substantial evidence supports the trial court's implied finding that any delay was not unreasonable.

II.    *Attorney Fees*

Trustee argues the trial court erred in denying his request to have his attorney fees reimbursed from the Trust. We agree in part.

9

A.     *Legal Background*

" '[T]he Probate Code is studded with provisions authorizing the trustee to hire and pay (or seek reimbursement for having paid) attorneys to assist in trust administration.' [Citation.] . . . [¶] ' "The underlying principle which guides the court in allowing costs and attorneys' fees incidental to litigation out of a trust estate is that such litigation is a benefit and a service to the trust," ' and not for the personal benefit of the trustee." (*People ex rel. Harris & Becerra v. Shine* (2017) 16 Cal.App.5th 524, 534 (*Harris*).)

For example, in *Whittlesey v. Aiello* (2002) 104 Cal.App.4th 1221 (*Whittlesey*), one beneficiary contested a trust amendment that removed her as primary beneficiary. (*Id.* at pp. 1224–1225.) The trustee unsuccessfully defended the contest and sought reimbursement of his attorney fees from the trust. (*Id.* at p. 1225.) The Court of Appeal affirmed the trial court's denial of reimbursement, reasoning, "where the trust is not benefited by litigation, or did not stand to be benefited if the trustee had succeeded, there is no basis for the recovery of expenses out of the trust assets." (*Id.* at p. 1230.) "The essence of the underlying action was not a challenge to the existence of the trust; it was a dispute over who would control and benefit from it. Whether or not the contest prevailed, the trust would remain intact." (*Id.* at p. 1228.) Moreover, because the trustee was unsuccessful in the litigation, "an award of fees to [the trustee's attorney] from the trust would be, in effect, an award from [the successful beneficiary]. In other words, [the beneficiary] would be required to finance her own trust litigation and that of her opponent, despite the fact she prevailed. There can be no equity in that." (*Id.* at p. 1230; see also *Terry v. Conlan* (2005) 131 Cal.App.4th 1445, 1464 (*Terry*) ["[The trustee] has not participated in this litigation as a neutral trustee to defend the trust and protect its assets; rather, she has consistently pursued her own

10

interests [as beneficiary] . . . . As such, she must bear her own costs in this litigation, rather than be reimbursed from the trust."].)

"A trustee's entitlement to use of trust assets to retain and compensate attorneys may be expanded by the terms of the trust instrument." (*Harris, supra,* 16 Cal.App.5th at p. 535.) For example, in *Doolittle v. Exchange Bank* (2015) 241 Cal.App.4th 529 (*Doolittle*), an independent trustee sought an order authorizing use of trust assets to defend against a contest to a trust amendment. (*Id.* at pp. 535–536.) The Court of Appeal affirmed the trial court's order granting the request, finding *Whittlesey* and *Terry* distinguishable because of trust provisions stating: " 'The Trustee is hereby directed to defend, at the expense of any trust estate governed by this Agreement, any contest or other attack of any nature on this Agreement, on any of its provisions and any amendments hereto . . . .' " (*Id.* at pp. 534, 538.)

" 'Allowance of litigation expenses rests in the sound discretion of the trial court, whose ruling will not be disturbed on appeal absent an abuse.' [Citation.] However, a trial court abuses its discretion when it applies the wrong legal standards. [Citation.] We decide questions of law de novo." (*Harris, supra,* 16 Cal.App.5th at p. 534.)

B.    *Analysis*

Trustee relies on two provisions in the Trust. First, "The trustee may, in the trustee's discretion, initiate or defend, at the expense of the trust, any litigation that the trustee consider[s] advisable relating to the trust or any property of the trust estate." Second, "The trustee is authorized to defend, at the expense of the trust estate, any contest or other attack of any nature on this trust or any of its provisions or amendments."

Trustee argues he had a "duty" under these Trust provisions to defend against Plaintiffs' complaint and petition, asserting the provisions are "nearly

11

identical" to those in *Doolittle.* To the contrary, the provisions in that case were materially different, stating the trustee was " '*directed* to defend' " certain types of actions. (*Doolittle, supra,* 241 Cal.App.4th at p. 534, italics added.) The Trust, in contrast, authorizes certain litigation conduct but does not direct it.

To the extent Trustee suggests the Trust provisions require reimbursement of attorney fees from the Trust regardless of whether the Trustee's litigation position was reasonable, we disagree. We will not assume, absent clear indication to the contrary, that the Trust provisions alter settled law requiring a trustee's litigation position to be reasonable to recover fees.[4] (See Prob. Code, § 16011 ["The trustee has a duty to take reasonable steps to defend actions that may result in a loss to the trust."]; *Whittlesey, supra,* 104 Cal.App.4th at p. 1230 [discussing whether facts "establish the objective reasonableness of the trustee's defense"]; *Estate of Moore* (2015) 240 Cal.App.4th 1101, 1106 ["As trustee, the burden was on appellant to show that he subjectively believed the fees and expenses were necessary or appropriate to carry out the trust's purposes, and that his belief was objectively reasonable."].) The Trust's provisions do not provide such a clear indication. To the contrary, the first provision expressly specifies the trustee must consider the litigation "advisable."

---

[4] Trustee's suggestion that the standard is lack of willful misconduct or gross negligence is unavailing. That standard applied in *Harris* because of language in the trust that is not present here. (See *Harris, supra,* 16 Cal.App.5th at p. 536 ["The Trust instrument here, as amended, provides: 'Except for the Trustee's willful misconduct or gross negligence . . . , the Trustee shall be indemnified and held harmless . . . by the trust estate . . . .' "].)

12

As Plaintiffs argue, there is substantial evidence supporting an implied finding that Trustee's defense of Plaintiffs' complaint was not reasonable because he was aware of the binding oral agreement. (See *Carter v. Cohen* (2010) 188 Cal.App.4th 1038, 1053 ["we will affirm the [fee] award on any basis properly supported by the record"].) Trustee's protestations that he did not know of the agreement are unavailing: the trial court found otherwise, and Trustee has not shown this finding lacked substantial evidence. Accordingly, the trial court's refusal to reimburse fees incurred in the defense of Plaintiffs' complaint was not in error.

It is unclear whether Trustee also seeks reimbursement for fees incurred in prosecuting the cross-complaint against Plaintiffs. To the extent he does seek such fees, we affirm the trial court's denial of reimbursement. Some of the claims asserted in the cross-complaint had no relation to the Trust; for example, the claim for intentional infliction of emotional distress. As for the claims that related to Moose Ranch, we affirm the trial court for the same reasons set forth above.

Reimbursement for attorney fees incurred in Trustee's defense of Plaintiffs' petition, however, is subject to a different analysis. There is no evidence this defense was unreasonable; to the contrary, it was successful. Moreover, the Trust expressly authorizes the use of Trust assets to defend against such contests: "The trustee is authorized to defend, at the expense of the trust estate, *any contest* or other attack of any nature on this trust or any of its provisions *or amendments*." (Italics added.) Some (though not all) of the Petition's causes of action sought to invalidate the amendment to the Trust. Thus, the Trustee is entitled to reimbursement of reasonable attorney fees incurred in his successful defense of Plaintiffs' attack on the Trust's

13

amendment. We will remand for the trial court to determine the amount of such fees.[5]

Plaintiffs argue it would be inequitable to encumber Moose Ranch to reimburse Trustee's attorney fees, an argument that assumes Moose Ranch will remain part of the Trust estate, the entity liable for reimbursement. Trustee concedes that this court's affirmance of the trial court's judgment on Plaintiffs' complaint will result in the transfer of Moose Ranch from the Trust to Plaintiffs.[6] Both parties appear to agree, however, that the trial court can order this transfer delayed until any fee order is satisfied. Trustee argues the trial court could also allow the transfer to proceed but subsequently order Plaintiffs to return Moose Ranch to the Trust. The parties disagree on the equities.

---

[5] For the first time at oral argument, Plaintiffs argued Trustee was not entitled to such a remand because he failed to include the judgment on the Petition in the record on appeal. Oral argument is too late to raise a new contention. " 'It is a clearly understood principle of appellate review, so well established as to need no citation to authority, that contentions raised for the first time at oral argument are disfavored and may be rejected solely on the ground of their untimeliness.' " (*Estate of McDaniel* (2008) 161 Cal.App.4th 458, 463.) In any event, we reject the claim. The record on appeal contains a minute order granting Trustee's motion for judgment on the Petition and the judgment on the complaint, which recites the procedural history of the litigation including entry of judgment on the Petition. The trial court did not issue a separate order on Trustee's fee motion and Trustee's notice of appeal indicates Trustee's appeal of both the judgment and "the trial court's failure to use the Proposed Judgment submitted by [Trustee] which included an award of costs and attorneys' fees in favor of [Trustee]." Trustee's failure to include the judgment on the Petition in the record on appeal does not preclude this court from reversing the trial court's postjudgment order denying his fee motion with respect to fees incurred in defending against the Petition.

[6] The parties filed supplemental briefs on this issue in response to our request.

14

We decline to decide these issues because their resolution may be unnecessary. First, it appears the Petition's only claims contesting the Trust amendment—the only reimbursable claims—were dismissed by Plaintiffs during their case-in-chief at trial. Accordingly, the amount of fees attributable to Trustee's defense of these claims is likely very small.[7] Second, although Trustee asserts Moose Ranch is the only asset in the Trust estate, the record citation provided does not so establish. The Trust identified other real and personal property as part of the estate; although Billie apparently transferred the other real property to Martin, Gary, and Tamara before her death, the Trust property also included livestock and multiple vehicles. Thus, the Trust may contain sufficient assets, independent of Moose Ranch, to satisfy an attorney fee order issued on remand. If not, the trial court in the first instance may determine whether Moose Ranch can and should be used to satisfy the order (issues on which we express no opinion).

## DISPOSITION

The aspect of the judgment denying Trustee's request for reimbursement from the Trust of reasonable attorney fees incurred in his successful defense of Plaintiffs' attack on the Trust's amendment is reversed and remanded. In all other respects, the judgment is affirmed. Plaintiffs are awarded their costs on appeal.

---

[7] Following trial, the trial court characterized the Petition as an action "to advance [Plaintiffs'] claims to Moose Ranch pursuant to contract," suggesting the overwhelming majority of litigation on the Petition did not involve its attack on the Trust amendment.

15

_____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

BURNS, J.

(A157499)

16