Filed 10/2/20  Heetebry v. Oakander CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IRENE HEETEBRY, as Executor and Trustee of the Miller Family Trust of 2004, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> LARRY OAKANDER et al., <br><br> Defendants and Respondents. | F077652 <br><br> (Mariposa Super. Ct. No. 10135) <br><br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Mariposa County.  F. Dana Walton, Judge.

Webb Law Group and Lenden F. Webb for Plaintiff and Appellant.

Yarra Law Group and H. Ty Kharazi for Defendants and Respondents.

-ooOoo-

Norman Miller loaned $300,000 to respondents.  The loan was evidenced by a note and secured by a deed of trust on a ranch property.  The ranch property was operated as a guest ranch by a general partnership that included respondents and others, including one Theresa Castaldi.  Subsequently, Theresa Castaldi executed another note obligating herself to repay the $300,000 loan.

Miller's signature appears on a document titled Request for Full Reconveyance, which indicated that the loan had been repaid in full, even though it had not. However, Miller's signature appears in an area designated to identify where the reconveyance should be mailed. A signature block under the operative wording of the document is blank.

Theresa Castaldi initially continued to make payments on the Note after the Full Reconveyance was executed. However, Miller eventually stopped receiving payments on the $300,000 loan, and Theresa Castaldi declared bankruptcy. In the bankruptcy proceedings, Miller submitted a claim and referenced the note signed by Castaldi. Miller received no distribution from the bankruptcy estate.

Respondents' loan was never repaid in full, and Miller initiated the present litigation. Miller prevailed at trial, but a motion for a new trial was subsequently granted. Respondents then moved for summary judgment, which the court granted. For the reasons explained below, we reverse the summary judgment.

**FACTS**

*Allegations in the Complaint*

Norman Miller sued respondents Larry and Patricia Oakander, among others. In an amended complaint filed July 27, 2012, Miller alleged as follows.

A general partnership called Coyote Springs Guest Ranch (the "Coyote Springs partnership") operated a guest ranch business at a property in Catheys Valley, California ("the Ranch" or "the property"). The general partnership had several partners, including respondents, Alfonse Castaldi, Theresa Castaldi, and Ken Baker. Title to the Ranch was held in the names of the individual partners at various times. However, the complaint alleged that each of the partners understood and agreed that the general partnership was responsible for paying the encumbrances against the Ranch.

One encumbrance was a deed of trust dated July 8, 2004, to which Miller is the beneficiary and First American Title Company ("First American") is the trustee. The

2.

trust deed was given to secure payment of an installment note, also dated July 8, 2004, between respondents and Miller ("the Note" or "the Oakander Note").  The principal amount was $300,000 with an eight percent annual interest rate.  Respondents were required to make monthly, interest-only payments beginning August 16, 2004; with the entire unpaid principal and interest due and payable in full on July 16, 2007.  The Note provided that if respondents sold or conveyed the Ranch without Miller's written consent, then Miller could declare the entire balance of the Note immediately due and payable.

Miller began living at the Ranch in or around 2004, at the invitation of Baker and Theresa Castaldi.  He worked there as ranch foreman.

Miller claims that Baker, the Castaldis, and respondent took advantage of him as an "elderly widower."  On December 1, 2006, respondents transferred the Ranch to Theresa Castaldi by quitclaim deed without Miller's knowledge or consent.[1]  However, the complaint alleged that the Castaldis, respondents and Baker understood and agreed that the Ranch would be held in trust for the benefit of the partnership.

On January 8, 2007, First American executed a "Full Reconveyance" as trustee of the Oakander deed of trust "to the person or persons legally entitled thereto."[2]  This was done without Miller's knowledge or consent.  Respondents, along with the Castaldis and Baker, requested the Full Reconveyance to extinguish Miller's security interest in the Ranch to facilitate the February 16, 2007, transaction described below.

On February 16, 2007, First American drafted another deed of trust by which Theresa Castaldi "conveyed" her "alleged interest" in the Ranch as collateral for securing a $300,000 loan from a Jay Obernolte and Heather Obernolte.

---

[1] Later in the course of litigation, the parties agreed that Theresa Castaldi signed an installment note on December 1, 2006 for $300,000 (the "Castaldi Note").  The parties agreed that the Castaldi Note does not refer to a new and separate loan, but instead refers to the same $300,000 Miller loaned to respondents in the Oakander Note.

[2] The Full Reconveyance misidentified Theresa Castaldi as the trustor of the deed of trust when in fact respondents were the trustors.

3.

Around this time, early 2007, the general partnership was experiencing financial difficulties. Payments on the Note were missed and then stopped altogether. Believing respondents, Baker, and Theresa Castaldi were his friends, Miller chose not to "push for" the payments due him under the Note.

In 2009, Theresa Castaldi filed for bankruptcy. Bankruptcy proceedings concluded February 26, 2010.

The Ranch was foreclosed upon in September 2010. The Ranch was conveyed to Citibank, N.A., as trustee for WaMu Series 2007-HE4 Trust. Due to the foreclosure, Miller moved away from the Ranch.[3]

*Causes of Action*

Miller's amended complaint asserted causes of action for quiet title, constructive trust, negligent reconveyance of real property (against First American only), elder abuse, intentional infliction of emotional distress, negligent infliction of emotional distress, fraud, constructive fraud (against First American only), breach of installment note (against respondents only), and "conspiracy."

*Pretrial Events*

During the present litigation, Miller settled with First American for $50,000. That settlement was approved on February 11, 2014.

On August 14, 2015, Miller dismissed the causes of action for fraud, conspiracy and elder abuse.[4]

---

[3] CitiBank transferred the Ranch to Baker on December 23, 2010. Miller believes Baker purchased the Ranch from CitiBank for $265,000. Miller also believes that Alfonse Castaldi provided Baker the funds to purchase the Ranch.

On January 7, 2011, Baker deeded the property to Alfonse Castaldi. Later that year, Baker and respondent Patricia Oakander sued the Castaldis for fraud and conversion, among other claims.

[4] Both parties agree that at the time of the summary judgment motion, Miller's only remaining cause of action was for breach of contract. However, the parties do not

4.

*Trial*

Trial began on January 31, 2017. By the time of trial, respondents were the only defendants remaining in the case.

At the conclusion of trial, respondents' counsel brought up an issue with the court. Counsel indicated that he was concerned about a statement the court made off the record during the lunch break on the first day of trial. The court had stated that Baker "should be in jail" or words to that effect.

The court responded that it had mistakenly thought Baker was already in custody and subsequently learned that was incorrect. The court said it would consider a motion for mistrial if respondents' counsel decided to make one. Counsel expressly declined to move for a mistrial.

On October 12, 2017, the court filed a proposed statement of decision finding in favor of Miller in the amount of $300,000 (and leaving unresolved the issue of whether Miller was entitled to interest). Respondents filed an opposition to the proposed statement of decision, arguing the court's statement regarding Baker showed bias, and that the court "never overcame" that bias. The court construed respondents' opposition as a motion for new trial and granted it, ordering the case to be reassigned to a new judge.[5]

Thereafter, on January 30, 2018, respondents moved for summary judgment. Respondents made several arguments, including: that Miller's breach of contract cause of action was precluded by the "security first rule" (see Code Civ. Proc., § 726); that

directly explain what happened to the causes of action for quiet title, negligent infliction of emotional distress and intentional infliction of emotional distress.

[5] The court did note that it invited respondents' counsel to file a motion for mistrial before the statement of decision, which counsel expressly declined to do.

Counsel's decision not to move for a mistrial when the issue was first raised, but then seeking a new trial *after* the court proposed to find in favor of Miller appears to have been blatant gamesmanship.

5.

Miller's claim was barred by the doctrine of laches; that the "cancellation" of the deed of trust resulted in a "cancellation" of the Note; that respondents were third party beneficiaries of Miller's settlement with First American, barring Miller's claim against respondents; Miller's claim is barred by the doctrine of unclean hands; Miller's claim is barred by the doctrine of estoppel.

In their summary judgment papers, respondents produced a document entitled "Request for Full Reconveyance." The document is addressed to First American Title Company. The document's body reads:

> "The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same."

Immediately below and to the right of this paragraph is a signature line. No signature appears there. Below that signature line is the phrase "Mail Reconveyance to:" and another several lines. "Norman W. Miller" is handwritten on the line immediately under "Mail Reconveyance to:"

Below all of the signature lines is the following text: "Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made." A space provided to date the document is blank.

In a declaration, Miller stated he was presented with the Request for Full Reconveyance on or about January 8, 2007. Miller stated he mistakenly believed the document was for the purpose of having the money owed by respondents to be "reconvey[ed]" back to him. Miller said Castaldi continued making payments on the Note after the Full Reconveyance was executed.

6.

Miller also produced a check from Theresa Castaldi dated January 5, 2007, in the amount of $300,000. Miller stated in a declaration he found the check in a manila envelope in his nightstand in 2012, even though it was dated January 5, 2007. Miller had never seen the check prior to finding it in 2012. Miller further stated Baker and Theresa Castaldi had access to his nightstand when he was not around.

In further support of the summary judgment motion, respondents requested the court take judicial notice of several documents.[6] Among them was a claim Miller filed in Theresa Castaldi's bankruptcy proceedings, which included the 2006 Castaldi Note. Miller's claim against Theresa Castaldi was listed in the amount of $500,000 plus interest.[7]

The court granted respondents' motion for summary judgment, accepting respondents' arguments that Miller's claim was barred by the doctrines of laches, equitable estoppel, and the security first rule. The court also held in the alternative that if it accepted Miller's contention that the reconveyance of the deed of trust without surrender of the note "morphed" the note into an unsecured written contract, then Miller's claim would be barred by the statute of limitations in Code of Civil Procedure section 337.

Appellant Irene Heetebry appeals in Miller's stead.[8]

---

[6] We were unable to locate the lower court's ruling on this request for judicial notice. However, the court's order granting summary judgment cites several of the documents for which judicial notice was sought. We assume the request for judicial notice was granted.

[7] In the declaration, Miller stated that Castaldi owed him an additional $200,000 pursuant to transactions "unrelated" to the present suit.

[8] Miller died while the present appeal was pending. Irene Heetebry requested to take Miller's place as appellant in the present appeal. Heetebry asserted she is the executor of Miller's estate and his successor-in-interest. In a filing on January 28, 2019, respondents notified the court that they did not oppose substituting Heetebry in Miller's stead as appellant. Accordingly, we granted the request in an order filed January 30, 2019.

## DISCUSSION

"Appellate courts determine de novo whether an issue of material fact exists and whether the moving party was entitled to summary judgment as a matter of law. [Citation.]" (*Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1206.) "In conducting its review, the appellate court must, 'view the evidence in a light favorable to plaintiff as the losing party.' [Citation.] [T]he moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. [Citation.] Typically, to meet this burden, a defendant moving for summary judgment can either negate an element of the cause of action or demonstrate a complete defense to plaintiff's claim. [Citation.] Only if the defendant meets its initial burden does the burden shift to the plaintiff to show a triable issue exists. [Citation.]" (*Id*. at p. 1207.)

### I.     Laches

Respondents argue Miller's breach of contract claim is barred by the doctrine of laches. They contend Miller could have foreclosed on the ranch property when he failed to receive payment in 2005; when respondents transferred the ranch property to Theresa Castaldi in 2006; or when he became aware of Theresa Castaldi's bankruptcy in 2009. Yet, Miller's amended complaint was not filed until July 27, 2012.**[9]** For the reasons explained below, we conclude laches is not applicable here.

"Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that 'equity aids the vigilant, not those who sleep on their rights.' [Citations.]" (*Magic Kitchen LLC v. Good Things Internat., Ltd.* (2007) 153 Cal.App.4th 1144, 1156.) "A defendant must demonstrate three elements to successfully assert a laches defense: (1) delay in asserting a right or a claim; (2) the delay was not reasonable

---

**[9]** The original complaint does not appear in the record. However, because we conclude laches does not apply even if the *original* complaint had been filed on July 27, 2012, the absence of the original complaint in the record is not material.

8.

or excusable; and (3) prejudice to the party against whom laches is asserted. [Citations.]" (*Id.* at p. 1157.)

The defense of laches may only be asserted in equitable actions, not in actions at law. (*Perez v. Singh* (1971) 21 Cal.App.3d 870, 872.) A suit to recover damages for fraud or breach of contract is an action at law. (*Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 671.) Thus, laches is not a valid defense to an action at law seeking damages for breach of contract. (See *Brownrigg v. deFrees* (1925) 196 Cal. 534, 538–539.)

"The equitable doctrine of laches has a legal equivalent in the statutes of limitations. To allow a laches defense in a legal action would be to override a time limit mandated by the Legislature." (*Unilogic, Inc. v. Burroughs Corp.* (1992) 10 Cal.App.4th 612, 619.)

Since Miller's current claim is an action at law seeking damages for breach of contract, the laches defense is not available.

Respondents assert that laches "has been used in contract" cases, but only support the assertion by reference to a single case. And even that decision stated, "In order to impute laches to one who *seeks relief in equity*, it should clearly appear that he either had actual knowledge of the facts or failed to acquire such knowledge after having notice thereof. [Citation.]" (*McNulty v. Lloyd* (1957) 149 Cal.App.2d 7, 10–11, italics added.) Moreover, the *McNulty* plaintiff essentially sought to recover possession of real property, which is an equitable claim. (*Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102, 1109–1110.)

Because the present case is not an equitable action, respondents cannot rely on the doctrine of laches to obtain summary judgment.

Respondents argue that because Miller did not sufficiently oppose its assertion of laches below, Miller effectively "waive[d]" or "invited error" on the issue. However, as the party opposing summary judgment, Miller had no burden to do anything until

9.

respondents first satisfied their burden. (See *Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 468.) And, for the reasons stated above, respondents did not carry their summary judgment burden with respect to laches.

Moreover, we have discretion to consider arguments first raised on appeal when they relate to pure questions of law. (See *Cislaw v. Southland Corp.* (1992) 4 Cal.App.4th 1284, 1297.) Whether laches applies to actions at law is a legal question.

## II. Miller's Claim is Subject to a Six-Year Statute of Limitation

Respondents assert Miller's claim is barred by the applicable statute of limitations. Miller counters that the statute of limitations for his claim is six years, pursuant to the California Uniform Commercial Code section 3118.[10] We agree with Miller that the six-year statute of limitations applies.

"[A]n action to enforce the obligation of a party to pay a note payable at a definite time shall be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date." (Cal. U. Com. Code, § 3118.)

Under the California Uniform Commercial Code, negotiable instruments are certain "unconditional" promises or orders. (Cal. U. Com. Code, § 3104, subd. (a).) If a promise has "an express condition to payment," then it is not an "unconditional" promise. (Cal. U. Com. Code, § 3106, subd. (a).)

Respondents argue the Note at issue here was not an unconditional promise. Specifically, respondents claim the Note had two conditions on maturity. We will address each in turn.

---

[10] Respondents argue that Miller "waived" his arguments concerning the California Uniform Commercial Code by failing to raise them below. However, we must review whether respondents carried their burden on summary judgment apart from Miller's opposition thereto. Moreover, we have discretion to consider arguments first raised on appeal when they concern questions of law. (See *Cislaw v. Southland Corp.*, *supra*, 4 Cal.App.4th at p. 1297.)

*Notice Provision*

First, respondents' brief references a provision in the Note purportedly requiring "notice of and consent of holder to transfer of the property described by the Deed of Trust." Respondents offer no citation to the record where this provision is to be found. Presumably, respondents are referring to this paragraph in the Note:

> "If the Maker [Oakanders] shall sell, convey or alienate the property as described in the Deed of Trust (defined below), or any part thereof, or any interest therein, or shall be divested of his title or any interest therein in any manner or way, whether voluntarily or involuntarily, without the written consent of the Holder [Miller] being first had and obtained, Holder shall have the right, at its option, except as prohibited by law, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any Note evidencing the same, immediately due and payable."

However, this provision does not describe a pre-condition to payment. It simply permits Miller to demand payment immediately upon a transfer of the property without his consent. In no way can this provision be construed "an express *condition* to payment." (Cal. U. Com. Code, § 3106, subd. (a), italics added.)

Moreover, the fact that a note permits for acceleration of a payment due date cannot not remove it from the scope of section 3118's statute of limitations, because the statute expressly contemplates that it will apply to notes that provide for acceleration. (See Cal. U. Com. Code, § 3118, subd. (a) [if a due date is accelerated, statute of limitations runs six years after the accelerated due date].)

*Balloon Payment Provision*

Second, respondents observe the Note says it is subject to Civil Code section 2966, which requires note holders to send a notice to the trustor of an upcoming balloon payment. (Civ. Code, § 2966, subd. (a).) Under that statute, a balloon payment is due on the later of: the date specified in the note itself, the date specified in the notice, or 90 days from the date of delivering/mailing of the notice. (Civ. Code, § 2966, subd. (b).) However, the statute also provides that failure to provide the required notice "does not

11.

extinguish any obligation of payment by the trustor." (*Ibid.* [failure to provide notice may extend due date of balloon payment but does not extinguish obligation to pay].)

A promise to pay is "unconditional" unless it contains "an express condition *to payment*." (Cal. U. Com. Code, § 3106, subd. (a), italics added.) As explained above, the phrase "express condition to payment" cannot mean provisions that merely permit alteration of the *due date* for payment without also imposing a condition on the actual *obligation to pay.* Otherwise, it would be nonsensical for section 3118 to expressly reference situations where a due date has been accelerated. Since the notice provision under Civil Code section 2966 is not an express condition to the obligation to pay, it does not take the Note outside the definition of a negotiable instrument subject to the six-year statute of limitations.

### *Conclusion*

Because the Oakander Note is a note payable and is "unconditional" as that term is used in California Uniform Commercial Code section 3106, the six-year statute of limitations applies. (See Cal. U. Com. Code, § 3118, subd. (a).)

### III.   **Security First Rule and Unclean Hands Doctrine**

Respondents raise several claims of purportedly negligent or malicious conduct by Miller. Several of these claims are used to support respondents' contentions concerning the security first rule and the unclean hands doctrine. We will analyze them together where appropriate.

### *Security First Rule*

The security first rule provides that a secured creditor must generally proceed against the security before enforcing the underlying debt. (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 999.)

"However, when the value of the security has been lost through no fault of the creditor, the creditor may bring a personal action on the debt. [Citation.]" (*Bank of America v. Graves* (1996) 51 Cal.App.4th 607, 611.) For example, " 'where the security

has been exhausted or rendered valueless *through no fault of the mortgagee, or beneficiary under a trust deed*, an action may be brought on the debt on the theory that the limitation to the single to the single action of foreclosure refers to the time the action is brought rather than when the trust deed was made, and that if the security is lost or has become valueless at the time the action is commenced, the debt is no longer secured.' " (*Ibid.*, italics added.)  However, " '[w]hen the mortgagee, *by his own act or neglect*, deprives himself of the right to foreclose on the mortgage, he at the same time deprives himself of the right to an action upon the note.' [Citation.]" (*Pacific Valley Bank v. Schwenke* (1987) 189 Cal.App.3d 134, 140–141, italics added.)

We use the term "extinguishment" to refer to a situation where the security has been exhausted or otherwise rendered valueless to the trust deed beneficiary.

### Unclean Hands Doctrine

Separate from the security first rule is a principle known as the unclean hands doctrine.  "The defense of unclean hands arises from the maxim, ' " 'He who comes into Equity must come with clean hands.' " ' [Citation.]  The doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy.  He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim.  [Citations.]" (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 978.)

### Summary Judgment

A summary judgment motion must respond to the issues framed by the complaint by showing there is no factual basis for relief on any theory contemplated by the complaint.  (*Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 848.)

### Analysis

Miller's amended complaint made material factual allegations indicating the security (i.e., the property interest in the Ranch) was extinguished through no fault of his own.  If true, that would render the security first rule inapplicable under cases like *Graves*

cited above. (See *Bank of America v. Graves*, *supra*, 51 Cal.App.4th at p. 611.) Specifically, the complaint alleged the 2004 trust deed was given as security for payment of the Note; that respondents (along with the Castaldis and Baker) were the ones who actually requested the reconveyance with the intent to extinguish Miller's security; and that the reconveyance was done without Miller's consent. The summary judgment motion needed to negate these factual assertions with evidence *and establish there was no material dispute of fact as to this issue*. Respondents failed to do so.

Instead, respondents claim "these events" arose out of Miller's "bad faith conduct" when he "hid" the Note. There are several problems with this argument.

First, with respect to the security first rule, the question is not whether Miller *generally* acted in good faith in the *sum* of his dealings (i.e., "these events") with respondents. The question is whether Miller bore fault *specifically* for the extinguishment of the security. If not, the security first rule does not bar his claims.

Second, respondents do not explain how their claim that Miller "hid" the Note, if accepted, would establish that Miller was at fault for the extinguishment of the security.

Third, respondents have not shown that there is no material dispute of fact as to whether Miller actually hid the Note. That is, even assuming that Miller having hid the note would be material, they have not established that it undisputedly occurred. The only material fact listed in respondents' motion that is conceivably related was that Miller did not "deposit" the Note "with the escrow." But respondents did not establish that Miller was required to deposit the Note, considering that it had not been paid in full. Nor have they established that the alleged failure to deposit the Note is what led to the extinguishment of the security. Finally, respondents have not negated the possibility that Miller's failure to deposit the Note with escrow was not malicious, but rather entirely consistent with his claim that he did not truly consent to reconveyance of the property.[11]

---

[11] Respondents do cite the Request for Full Reconveyance itself. It is true that there are several inferences that could be drawn from this ambiguous document,

14.

Later in their brief, respondents say that "it was the negligence of the third-party trustee that lead [*sic*] to the … [Note] being unsecured." If so, that would be consistent with the security having been exhausted because of the negligence of someone other than Miller.

### Settlement with First American

In their discussion of the security first rule, respondents contend that Miller was already "paid for his loss" through his settlement with First American.[12] But respondents do not explain why or how that assertion would impact the security first rule. Nor would the settlement with First American trigger the unclean hands doctrine.

Moreover, First American settled for $50,000. There is no evidence that this payment made Miller whole with respect to the Note, under which he was initially owed $300,000.[13]

---

including inferences favorable to respondents' position that Miller *did* intend to reconvey the property and acknowledge satisfaction of the Note. However, there are material disputes of fact as to Miller's actual intent. Miller's name only appears in the portion of the form indicating who the reconveyance should be mailed to. He did not sign the signature block under the operative paragraph of the Request for Full Reconveyance. Nor did he deliver the Note for cancellation, which the Request for Reconveyance identifies as a prerequisite "before reconveyance will be made." As a result of the ambiguity surrounding Miller's intent, "[p]arol evidence of the intention of [the] parties may be received to clear up [the] ambiguity …." (*In re Watterson's Estate* (1933) 130 Cal.App. 741 745; see also Code Civ. Proc., § 1856, subd. (g).) Because Miller presented evidence raising an inference that the Request for Full Reconveyance was not intended to cause the Note to become unsecured, respondents cannot prevail. While respondents dispute Miller's factual claims, such disputes cannot be resolved on summary judgment.

[12] In the span of two sentences, respondents assert First American was Miller's agent and that Miller is therefore "bound" to First American's execution of the Full Reconveyance. Respondents provide no legal authority to support this claim of agency.

[13] Respondents also assert that Miller "failed to foreclose on the Oakanders' Deed of Trust." But Miller was not required to foreclose if an exception to the security first rule applies. For the reasons explained herein, we conclude respondents did not adequately negate the issue raised in the complaint that the security was extinguished through no fault of Miller.

15.

*Castaldi*

Respondents also claim Miller "accepted the note from Castaldi" and is therefore unable to sue on the Oakander Note. However, respondents cite no authorities holding that Castaldi's unilateral execution of a new note (not signed by Miller) would affect the validity and enforceability of the Oakander Note.

Respondents contend that Miller's presentation of a claim against Theresa Castaldi in bankruptcy court somehow triggers the unclean hands doctrine. They suggest Miller was "lying in wait" until the bankruptcy was discharged before suing respondents on the Note. However, despite respondents' innuendo, we see nothing about Miller's bankruptcy claim that would prevent him from suing *other* obligors to the Note, such as respondents.

Respondents failed to establish the security first rule or the doctrine of unclean hands as complete defenses to Miller's action.

## IV. Equitable Estoppel

Respondents contend Miller is "estopped" from suing on the Note.

" ' " ' "Four elements must ordinarily be proved to establish an equitable estoppel: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury." ' " [Citation.]' [Citation.]" (*Hopkins v. Kedzierski* (2014) 225 Cal.App.4th 736, 756.)

Here, the court granting the summary judgment believed that it was empowered to decide whether equitable estoppel applies "even if there are disputed issues of fact" – citing to *Hopkins v. Kedzierski*, *supra*, 225 Cal.App.4th at page 745. Respondent repeats this claim on appeal. While it is true that a judge may resolve claims of equitable estoppel in a court trial, the opposite rule applies on a motion for summary judgment. If there is a dispute of fact, the court may not decide the issue of equitable estoppel and

16.

must deny the motion for summary judgment.  (See *Estate of Housley* (1997) 56 Cal.App.4th 342, 360–361.)

In arguing estoppel on appeal, respondents merely list five things Miller allegedly did wrong.  They do not explain how these actions satisfy each of the elements of equitable estoppel.  This failure to adequately brief the issue results in its forfeiture.  (See *Orange County Water Dist. v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 252, 360 [brief's failure to compare facts to elements of claims renders argument lacking and subject to forfeiture].)

## DISPOSITION

The judgment is reversed.  Appellant is awarded appellate costs.  The matter is remanded for proceedings consistent with this opinion.


POOCHIGIAN, Acting P.J.

WE CONCUR:


FRANSON, J.


SNAUFFER, J.

17.